[No. A048926. First Dist., Div. Two. Jan. 14, 1992.]

PAULINE S.K. LEUNG et al., Plaintiffs and Appellants, v.
CHINESE SIX COMPANIES, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976 and 976.1, this opinion is certified for publication with the exception of parts I and III.

COUNSEL

Edward J. Nevin for Plaintiffs and Appellants.

Tarkington, O'Connor & O'Neill, Bryan A. Marmesh and Jodylee A. Travis for Defendant and Appellant.

OPINION

KLINE, P. J.—This appeal and cross appeal arise from a wrongful death action brought under Labor Code section 3706. Defendant and appellant contends the trial court erred in granting respondents' motion for a directed verdict and in applying a penalty provision of the Labor Code to the judgment. On cross-appeal, respondents[1] contend the trial court erred in computing the amount of attorney fees and the amount of the statutory penalty.

STATEMENT OF THE CASE

On January 17, 1989, respondents Pauline S. K. and Francis Leung filed a complaint for damages under Labor Code section 3706[2] for the wrongful death of Simon Leung against appellant Chinese Six Companies, doing business as Chinese Benevolent Association. The complaint alleged that Leung was killed by a firecracker explosion on the premises of appellant, his employer, during the course of his employment. In the first stage of bifurcated proceedings, the court determined that appellant did not have workers' compensation coverage for the decedent. The issue of causation was then tried to a jury, which determined that the decedent died as a result of inhalation of smoke from the firecracker explosion. The trial court granted

---

[1] In the interest of clarity, plaintiffs, who are also cross-appellants, will be referred to as "respondents" throughout this opinion.

[2] All further statutory references are to the Labor Code unless otherwise specified.

respondents' motion for a directed verdict on the issue of whether Leung was acting in the course and scope of his employment at the time of the injury which caused his death. The jury awarded respondents damages of $500,000.

On March 1, the trial court granted respondents' motion for attorneys fees in part, granted respondents' motion for award of a 10 percent increase on the judgment pursuant to Labor Code section 4554, and denied appellant's motion for a new trial. Judgment in the amount of $670,604.36 was filed on March 16, including $500,000 in damages awarded by the jury, $100,000 in attorneys fees, $20,604.36 in costs and $50,000 as a penalty under section 4554.

Appellant filed an timely notice of appeal on March 6 and amended notice of appeal on April 9. Respondents filed a timely notice of cross-appeal on March 30.

## STATEMENT OF FACTS

Respondents Pauline and Francis Leung are the widow and son of decedent Simon Leung. From 1979 until the time of his death, the decedent was employed as a janitor five days a week at Scoma's Restaurant in San Francisco. In 1984, he also began to work for appellant Chinese Six Companies; he was appellant's only employee and performed a variety of tasks as needed. The decedent was expected to be at appellant's offices from 2 to 5 p.m. each weekday but it was left to him to decide what needed to be done and when was the best time to do it. He was paid once a month and was not paid overtime.

One of the decedent's jobs was to be sure things were ready for the annual "Ten-Ten" celebration sponsored by appellant in honor of the founding of the Republic of China. On October 10, 1988, the decedent was not given any special instructions about when to come in or what needed to be done. There was no requirement as to when he performed the tasks necessary to ready the premises for the celebration; it was up to him to determine whether to perform these tasks during his regular work hours or at other times, as long as the premises were ready in time for the event. He was not specifically told by appellant's executive director to report to work early or to man a fire hose on October 10, 1988.

During the October 10, 1988, celebration, a string of 50,000 to 100,000 firecrackers was exploded in front of appellant's building. Kwan Leung (no relation to the decedent's family) testified that he was standing on the sidewalk of Stockton Street holding the rope that was lowering the firecrackers as they were exploding. The explosion began approximately 12:10 p.m., lasted about 10 to 20 minutes and produced a lot of smoke.

When Kwan Leung arrived at appellant's building about 10:30 a.m. on October 10, he saw the decedent standing in front. The decedent said he was sick with asthma and would not be able to help appellant with the celebration this year and gave Kwan Leung the key to open the door of the building. The decedent had his atomizer or vaporizer out and was having difficulty breathing. The decedent went inside and sat down for about half an hour. Approximately 11:30, Kwan Leung was told someone was sick and saw the decedent in front of the post office a building away; the bottle he was squeezing was empty and Kwan Leung helped him to a police car and remained with him on and off for the next 20 to 30 minutes until an ambulance arrived. Kwan Leung testified that this was before he set off the firecrackers and that he did not see the decedent after the firecracker explosion, although he also testified that he did not recall clearly the sequence of events. Kwan Leung testified that he did not see the decedent holding a hose that was kept on the landing of appellant's building in case it was needed during the firecracker explosion.

Koon Yik Yee testified that about 11:30 a.m. on October 10 he saw the decedent leaning against the wall of the post office looking like he was vomiting. The firecrackers had not yet exploded.

Wai Fun Lew, the decedent's mother-in-law, testified that before the firecracker explosion she saw the decedent "carrying things in and out to get things ready." When the firecrackers were set off, the decedent was standing on the stairs holding a water hose. Once the explosion began, Lew did not see the decedent because the area became very smoky. After the last and biggest firecracker went off, she saw him run down the stairs and stand with his head nodding in the area of the post office; she then saw Kwan Leung take the decedent to the police car.

Three police officers who were on the scene of the celebration observed the decedent come down the stairs and walk to the post office after the fireworks, pumping an inhaler into his mouth. Along with Kwan Leung, who was helping the decedent, the officers took the decedent to their van and called for an ambulance.

## DISCUSSION

### I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.

■ Appellant next contends that the trial court erred in adding a 10 percent penalty to the judgment pursuant to section 4554. Section 4554 provides: "In case of the willful failure by an employer to secure the payment of compensation, the amount of compensation otherwise recoverable for injury or death as provided in this division shall be increased 10 percent. Failure of the employer to secure the payment of compensation as provided in Article 1 (commencing at Section 3700) of Chapter 4 of Part 1 of this division is prima facie evidence of willfulness on his part." Appellant's contention that this statute does not apply in actions under section 3706 has merit.

Section 4554 provides for an increase in the amount of "compensation otherwise recoverable for injury or death as provided in this division." Section 4554 appears in chapter 2 of division 4, which is titled "Compensation Schedules" and establishes the means by which compensation is to be furnished or paid by employers. (§ 4550.) Other statutes in this chapter provide for reduction of compensation in cases of serious and willful misconduct of the injured employee (§§ 4551, 4552), increase of compensation in cases of serious and willful misconduct of the employer (§ 4553) and illegal employment of a minor under age 16 (§ 4557), and award of attorney's fees in cases where the employer failed to secure payment of compensation. (§ 4555.)

" 'Compensation' means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee . . . , without regard to negligence." (§ 3207.) Section 3706 distinguishes between "compensation" and "damages": "If any employer fails to secure the payment of *compensation*, any injured employee or his dependents may bring an action at law against such employer for *damages*, as if this division did not apply." While, as discussed in part I of this opinion, an action under section 3706 is not independent of the workers' compensation scheme, such an action simply does not result in "compensation" within the meaning of the statutes; "compensation" is specifically defined as benefits or payments made without regard to negligence while recovery of damages in a section

*See footnote, *ante,* page 801.

3706 action requires proof of the employer's liability under tort principles (albeit with the aid of statutory presumptions and limitations lightening the employee's burden). A section 3706 action is one for *damages* which substitute for the compensation that would be due an employee but for the employer's failure to secure such compensation. Accordingly, the penalty provision of section 4554 may not serve to increase the amount of damages awarded in a section 3706 action.

Respondents urge us to view the damages awarded in a section 3706 action as "compensation"—a "benefit or payment conferred by Division 4" (§ 3207)—because such an action is an alternative remedy provided by the workers' compensation scheme. This suggestion ignores both the fact that "compensation" is specifically defined in the workers' compensation statutes to refer to payments made without regard to negligence and that section 3706 itself distinguishes between "compensation" and "damages." The cases upon which respondents rely to demonstrate that "compensation" is given a broad interpretation involve payments directly provided for in the workers compensation statutes, not damages awarded in a civil action. (*Adams* v. *Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226 [133 Cal.Rptr. 517, 555 P.2d 303] [penalty provision for unreasonable delay in compensation payment applied to medical-legal costs incurred in prosecuting claim]; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1982) 130 Cal.App.3d 933 [182 Cal.Rptr. 171] [penalty for failure to timely pay benefits is "compensation"]; *Knopfer* v. *Flournoy* (1973) 34 Cal.App.3d 318 [109 Cal.Rptr. 892] [paid leave of absence in lieu of disability payments under section 4800 are "compensation"].) ▪ Nor does the fact that statutes imposing penalties on employers for failure to provide workers' compensation insurance must be construed liberally in favor of the employee (*Strickland* v. *Foster* (1985) 165 Cal.App.3d 114, 117 [211 Cal.Rptr. 305]) mean that such statutes may be interpreted to apply where their terms make them inapplicable. As for respondents' claim that precluding application of the section 4554 penalty in section 3706 actions gives an impermissible advantage to uninsured employers over insured employers (see *Logan* v. *Masters* (1981) 120 Cal.App.3d 145, 148 [174 Cal.Rptr. 465]), the fact that the uninsured employer is liable in a civil suit, with a presumption of negligence and limited defenses and without limitation on the amount of potential damages, is itself a penalty.[5]

We conclude that the penalty assessed under section 4554 must be stricken from the judgment. This conclusion makes it unnecessary for us to consider

---

[5]The section 4554 penalty against uninsured employers applies when an employee seeks compensation from the Workers' Compensation Appeals Board, as the employee is entitled to do in addition to bringing an action under section 3706. (§ 3715, subd. (a).) Penalties such as that provided in section 4554 increase the amount an employee can recover, in relevant circumstances, over that provided by the compensation schedules; in a civil action, because the amount of the potential damage award is not so circumscribed, the penalty provisions are

respondents' argument in their cross-appeal that the trial court erred in its calculation of the penalty.

### III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The portion of the judgment awarding a 10 percent increase on the judgment is stricken. As modified, the judgment is affirmed.

Benson, J., and Peterson, J., concurred.

---

less necessary. While the uninsured employer in a compensation proceeding is subject to the statutory penalty, the uninsured employer in a section 3706 proceeding faces the specter of a civil damages award. When a judgment is obtained in a civil action, any compensation awarded, paid or secured by the employer is credited against the judgment. (§ 3709.)

*See footnote, *ante*, page 801.