[No. D023655. Fourth Dist., Div. One. Apr. 3, 1996.]

THE STATE OF CALIFORNIA et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and SHIRLEY
ELLISON, Respondents.

130

COUNSEL

Krimen, Klein, Da Silva, Daneri & Bloom and Louis Harris for Petitioners.

Scott A. O'Mara, Adriene J. Clark, Vincent Bausano, Frederick T. Dietrich and Thomas J. McBirnie for Respondents.

OPINION

NARES, J.—The sole question in this proceeding is whether the Workers' Compensation Appeals Board (WCAB or Board) has jurisdiction to impose a penalty for unreasonable delay in payment of industrial disability leave (IDL) to which an injured state employee is entitled under Government Code section 19869 et seq. There is no specific legislative directive by which to resolve this issue. However, we conclude the WCAB had jurisdiction to impose the penalty as it did in this case. Our conclusion is based on the Legislature's definition of IDL as identical with temporary disability indemnity (TD) under the Labor Code[1] (Gov. Code, § 19870, subd. (a)), the Board's unquestioned jurisdiction of TD which is also available to an injured state employee, the Board's construction of its authority which is not clearly erroneous, the Legislature's salutary general purpose in authorizing the penalty in cases of unreasonably delayed payment, and the requirement that statutory enactments pertaining to workers' compensation are to be construed liberally in favor of the injured worker. Thus, we affirm the order.

FACTS

*Nature of Order*

The order in question was made in connection with a grant of reconsideration by the Board at the request of the State Compensation Insurance Fund (SCIF) and the state agency employer of the injured state worker.[2] The order's specific nature is important in the resolution of the jurisdictional issue. The order is that while WCAB does not have jurisdiction to award IDL, since jurisdiction to make such an award lies with the state's Department of Personnel Administration (DPA), it does have jurisdiction to award

---

[1]Statutory references are to the Labor Code unless otherwise indicated.

[2]The injured state worker, Shirley Ellison, was a correctional officer employed by the State Department of Corrections at the R.J. Donovan Correctional facility. There is no dispute as to the Board's findings Ellison sustained an injury arising out of and in the course of her employment, or that the injury caused temporary disability for the period April 27, 1992, through January 14, 1993, and that Ellison was entitled to receive benefits for this period of disability.

a penalty based on the lesser amount of TD (§§ 3201-6002, 6100-6149) that would be due for the seven-and-one-half-month period of temporary disability and as a result of the state employer's not having paid any benefit to the worker for the temporary disability until nearly four months after the Board made the award. The amended findings on reconsideration thus provided, in pertinent part:[3] "The injury caused temporary disability for the period April 27, 1992 through January 14, 1993, for which indemnity is payable in accordance with Government Code section 19871, *plus* a *10%* [*penalty*] against *that amount which would have been payable as temporary disability indemnity during that period*, for the unreasonable delay in payment, less credit for such payments previously made." (Italics added.)

*Summary of Case*

After suffering stress in her job as a correctional officer, a position she had held for nearly six years, Ellison asked the warden for a leave of absence, which was refused. In April 1992, Ellison filed a claim, which SCIF denied in July after a medical examination. Ellison obtained some treatment and did not work the remainder of 1992 except for three days in October, the month she retained an attorney. In February 1993, she had an examination, the results of which were reported to her attorney in April 1993.

In June 1993, Ellison filed her application for adjudication of claim. After two hearings before the workers' compensation judge, in January 1994, an award was made based on findings of temporary (as well as permanent[4]) disability plus medical treatment and attorney fees.

On March 28, 1994, the parties stipulated to amend the full salary award for the entire seven-and-one-half-month period of temporary disability to provide instead, consistent with the IDL provisions of Government Code section 19871, that Ellison is entitled to full salary for only the first 22 days of disability and to two-thirds of gross salary thereafter for the remainder of the disability period ending January 14, 1993.

On April 4, and again on May 6, 1994, Ellison demanded SCIF pay the full amount due under the stipulation and award, noting that the $2,984 already paid apparently was attributable to the award for permanent disability, and she had not been paid the amount due for IDL for the period April

---

[3]The Board's grant of reconsideration also pertained to an attorney fees award with respect to which no issue is raised in this proceeding.

[4]The permanent disability found was 7¾ percent, in the sum of $3,255. There is no issue in this case concerning the permanent disability award.

27, 1992, to January 14, 1993. The May 6 demand also requested SCIF to issue a 10 percent penalty. On May 9, 1994, before this proceeding seeking penalties was filed, SCIF paid the amount due for IDL, and the parties so stipulated in the penalties proceeding.

On May 24, 1994, Ellison commenced these proceedings before the Board under sections 5814 and 5814.5, relating to penalties, for payment of benefits pursuant to the award. In January 1995, after points and authorities were filed and additional exhibits were received, the workers' compensation judge filed a supplemental opinion, findings and award stating in part:

"[T]he defendant has never since the initial Finding & Award of January 14, 1994 disputed that applicant was entitled to temporary disability for the period of 4-27-92 through 1-14-93 which, even at $336.00 per week, if nothing else, is approximately $12,000.00. The dispute was over what weekly benefit was appropriate, be it full pay for the whole period or 22 days of full pay and 2/3 pay thereafter per Government Code 19871. [¶] This dispute was supposedly solved [by] the stipulated joint/amended Finding & Award of March 28, 1994. . . .

"However, despite the original Finding & Award, despite this Joint Amended Finding & Award the temporary disability was finally paid to the applicant only . . . on 5-9-94 or some 115 days after the Finding & Award and some 42 days after the Amended Award of 3-28-94.

". . . [T]here is no excuse for this delay in payment of temporary disability per Government Code section 19871 for which the penalty should be 10% for the entire period. . . ."

On SCIF's petition for reconsideration, the Board upheld the award of a penalty by the workers' compensation judge. The Board held, however, the penalty could only be calculated on the basis of the TD amount that would have been due during the disability period, not on the amount of the IDL payable for that period.

This writ of review proceeding followed.[5]

---

[5]In July 1995, we denied the writ. The Supreme Court granted review and transferred the cause to us with directions to vacate the order denying review and to issue a writ of review to be heard when the proceeding is ordered on calendar.

DISCUSSION

*General Applicability of Workers' Compensation to State Workers*

 With respect to workers' compensation benefits generally, the state and every state agency is an "employer" for purposes of the Workers' Compensation Act (§ 3300), and state workers come within the definition of "employee" as persons "in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ." (§ 3351.) In addition, "The State and each county, city, district, and public agency thereof and all State institutions are conclusively presumed to have elected to come within the provisions of this division as to all employments otherwise excluded from this division." (§ 4155.)

The state insures against its liability for compensation with SCIF pursuant to certain provisions of the Insurance Code. (See Ins. Code, §§ 11870, 11871, 11873; and see § 3700 ["Every employer except the state shall secure the payment of compensation . . . ."].)

*The IDL Benefit*

" 'Industrial disability leave' *means temporary disability as defined in Divisions 4* (commencing with Section 3201) *and 4.5* (commencing with Section 6100) *of the Labor Code* and includes any period in which the disability is permanent and stationary and the disabled employee is undergoing vocational rehabilitation." (Gov. Code, § 19870, subd. (a), italics added.)

The IDL benefit applies to state officers and employees other than "state safety" class employees who are provided for by the special workers' compensation payments provisions of article 6 (commencing with section 4800), chapter 2, part 2, division 4. (Gov. Code, § 19869 ["This article does not apply to state officers and employees who are included in the provisions of Article 6 [§ 4800 et seq.] of Chapter 2 of Part 2 of Division 4 of the Labor Code."].)

The IDL benefit, in existence since July 1974 (former Gov. Code, § 18120 et seq.; Stats. 1974, ch. 374, § 2.5, p. 735, urgency statute, operative July 1, 1974, repealed 1981, see now Gov. Code, § 19869), provides a temporary disability benefit in an amount ordinarily greater than the amount available under TD and "for a period not exceeding 52 weeks within two years from the first day of disability." (Gov. Code, § 19871, subd. (a).) For this period

of up to 52 weeks, the IDL amount is full pay (less ordinary deductions)[6] for the first 22 working days of disability and two-thirds of full pay for the remainder of the period. (*Ibid.*[7]) An employee receiving IDL may elect to supplement the payments after the 22d working day with accrued leave credits in an amount necessary to approximate the employee's full net pay. (Gov. Code, § 19872, subd. (b).)[8]

While collecting IDL the injured state employee continues to receive all employee benefits. (Gov. Code, § 19871.1.) However, unless the employee elects to supplement the IDL with accrued leave credits after the 22d day, the employee may not receive paid sick leave, annual leave or TD. (Gov. Code, § 19872, subds. (a) and (b).)

Payment of IDL is contingent on complete medical certification of the illness or injury, including diagnosis and prognosis for recovery, and contingent on the employee's agreement to cooperate and participate in a reasonable and appropriate vocational rehabilitation plan when furnished by the state subject to appropriate medical approval as determined by the DPA. (Gov. Code, §§ 19876, subd. (a), 19876.5.) The retraining and rehabilitation provisions of division 4.7 (commencing with section 6200) of the Labor Code do not apply to state employees to whom IDL applies. (Gov. Code, § 19873, subd. (a).)

After termination of IDL benefits, an employee who continues to be temporarily disabled is entitled to receive TD as well as accumulated sick

---

[6]"Full pay" is defined as "the gross base salary earnable by the employee and subject to retirement contribution if he had not vacated his position." (Gov. Code, § 19870, subd. (b).) The full pay amount of the IDL benefit is calculated by subtracting the employee's "withholding based on his or her exemptions in effect on the date of his or her disability for federal income taxes, state income taxes, and social security taxes . . ." as well as other adjustments for such things as employer-subsidized disability benefit programs, retirement contributions and discretionary deductions. (Gov. Code, § 19871, subd. (a).)

[7]The actual starting time for placement of a state worker on IDL, whether on the first day of injury or four days thereafter, is subject to variations depending on such things as the length of disability, need for hospitalization or the particular source of the injury if it occurs to a civil servant or University of California employee. (Gov. Code, § 19875, subds. (a) and (b).)

[8]Also available to certain employees, designated "nonrepresented employees" defined in Government Code section 19870, subdivision (c), is an enhanced IDL which generally provides, after the 22nd day of temporary disability and for no longer than one year, a benefit equivalent to the employee's net take home salary on the date of the injury. (Gov. Code, § 19871.2.)

The final decision as to whether an employee is eligible for, or continues to be eligible for, enhanced benefits rests with the appointing authority or its designee. (Gov. Code, § 19871.2.) The appointing authority may periodically review the employee's condition by any means necessary to determine an employee's continued eligibility for enhanced benefits. (*Ibid.*)

leave, compensable overtime, vacation or annual leave for the absence unless the employee elects otherwise and so long as the employee does not receive payment in excess of full salary or wage. (Gov. Code, §§ 19874, subd. (a), 19863, subd. (a).) When the employee's accumulated sick leave, overtime, vacation, or annual leave, or all of them, are exhausted, the employee is still entitled to receive TD. (Gov. Code, § 19863, subd. (a).) While on TD, with or without use of all or a part of such accumulated time, the state employee is entitled to medical, surgical, and hospital treatment as provided in the Labor Code. (*Ibid.*)

Concerning the applicability of IDL, Government Code section 19863, subdivision (b), provides: "State officers and employees who are covered by [the IDL provisions in] Article 4 . . . shall be entitled to industrial and temporary disability benefits only as provided by that article."

Thus, state workers eligible for IDL are entitled to this benefit, rather than TD, until the IDL is exhausted, at which point the employee who continues to be temporarily disabled is entitled to receive TD.[9]

*Administration*

In 1981, when the Legislature created the DPA (Stats. 1981, ch. 230, § 55, p. 1168 et seq.), IDL benefits became subject to the provision: "The [DPA] shall adopt any rules and regulations necessary for the administration of this article. "The appointing power of any officer or employee not a member of the civil service shall adopt any rules and regulations necessary for the administration of this article for such officers or employees." (Gov. Code, § 19877.)[10]

The DPA has adopted a series of regulations for IDL. (Cal. Code Regs., tit. 2, § 599.755 et seq.) Among the regulations are provisions that SCIF shall make all temporary disability eligibility determinations (*Id.*, § 599.758) and that disabled employees have an election to receive either IDL or TD as follows: "For the first 22 working days of disability, all disabled employees shall receive Industrial Disability Leave (IDL) unless the gross amount of

---

[9]Most of the IDL benefit provisions are conditioned on an absence of conflict with a memorandum of understanding reached pursuant to Government Code section 3517.5. The memorandum of understanding controls unless its provisions require an expenditure of funds, in which case such provisions require approval in the annual budget to become effective. (See, e.g., Gov. Code, §§ 19870, subd. (b), 19871, subd. (b).)

[10]From 1974 to 1981, the IDL program was subject to rules and regulations adopted by the State Personnel Board. (Former Gov. Code, § 18129; see now Gov. Code, § 19816, as amended by Stats. 1985, ch. 1015, § 12, p. 3282.)

the IDL benefit is less than that which would be provided by Workers' Compensation Temporary Disability (WCTD) payments without supplementation, in which case the employee shall receive WCTD payments without supplementation rather than IDL payments. This initial benefit placement is subject to one opportunity to effect a retroactive change in accordance with a subsequent employee benefit choice provided by this Section. . . ." (*Id.*, § 599.759.)

Accordingly, DPA recognizes eligibility of temporarily disabled state workers for TD benefits in cases where the TD benefits without supplementation are greater than the IDL benefits.

With respect to appeals, the DPA regulations read:

"The employee shall first seek departmental administrative remedy for complaints arising out of Industrial Disability Leave. Thereafter, the employee shall have the *right of appeal to*:

"(a) The *Division of Industrial Accidents on matters within the jurisdiction of the Worker's Compensation Act* of the Labor Code. *Such matters include* but are not limited to *determination of liability for* provision of medical care, *temporary disability payments*, vocational rehabilitation, and related items.

"(b) The *Department of Personnel Administration on employee benefit matters as provided by the Government Code. Such matters include*, but are not limited to, *issues involving Industrial Disability Leave payments*, leave administration, and related matters.

"(c) The Department of Rehabilitation on matters within the rehabilitation provisions of the Welfare and Institutions Code. Such matters include, but are not limited to, issues relating to the provision of services by the Department of Rehabilitation." (Cal. Code Regs., tit. 2, § 599.768, italics added.)

Under paragraphs (a) and (b) of this regulation there is closely related jurisdiction for appeals in both WCAB and DPA. There can be no doubt that in the case of an employee who, for example, exercised the right to select TD instead of IDL because the TD benefit is greater, both WCAB and DPA would be authorized to act in the matter. If there were a dispute as to which benefit were higher, it is apparent both agencies would be empowered to act under this DPA regulation.

In this general connection, it is to be noted that DPA, through its director, is expressly authorized to "[h]old hearings, subpoena witnesses, administer oaths, and conduct investigations concerning all matters relating to the department's jurisdiction." (Gov. Code, § 19815.4, subd. (e).)

## WCAB Authority

As more fully detailed in a different context, in *Greener* v. *Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 et seq.[11] [25 Cal.Rptr.2d 539, 863 P.2d 784], pursuant to the Legislature's constitutional authority to establish a system of workers' compensation (Cal. Const., art. XIV, § 4), ". . . the Legislature has conferred rulemaking and adjudicatory powers on the Board. The Board is given the power to adjudicate claims by employees for injury 'arising out of and in the course' of their employment. (§ 3600, subd. (a).) *'Proceedings which in any manner concern the recovery of compensation, or any right or liability "arising out of or incidental thereto"* are to be instituted solely before the Appeals Board. (Lab. Code, § 5300, subd. (a).)' (*Santiago* v. *Employee Benefits Services* [1985] 168 Cal.App.3d 898, 901 [214 Cal.Rptr. 679].)" (6 Cal.4th at pp. 1038-1039, italics added, fn. omitted.)

Section 5300 lists proceedings to be brought only before the Board, providing in part:

"All the following proceedings shall be instituted before the appeals board and not elsewhere, except as otherwise provided in Division 4:

"(a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto.

"(b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon the employer by this division in favor of the injured employee, his or her dependents, or any third person.

". . . . . . . . . . . . . . . . . . . . . . . .

"(e) For obtaining any order which by Division 4 the appeals board is authorized to make.

"(f) For the determination of any other matter, jurisdiction over which is vested by Division 4 in the Division of Workers' Compensation, including the administrative director and the appeals board."

---

[11]*Greener* was primarily concerned with the jurisdiction of the superior court over the WCAB. (See § 5955.) *Greener* held, among other things, the superior court does not have subject matter jurisdiction over an action to declare provisions of the Workers' Compensation Act invalid, and to enjoin enforcement of those provisions; rather, such an action must either await decision by the Board and petition for review, or be pursued by writ of mandate in the Court of Appeal. (*Greener* v. *Workers' Comp. Appeals Bd., supra,* 6 Cal.4th at pp. 1032-1033, 1044, 1046.)

As stated in *Greener*, the "jurisdiction thus conferred extends to claims for industrial injury and proceedings related to the enforcement of rights under the workers' compensation law." (*Greener v. Worker's Comp. Appeals Bd.*, *supra*, 6 Cal.4th at p. 1039.)

" 'Compensation' means compensation under Division 4 and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence." (§ 3207; see *Adams v. Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 231 [133 Cal.Rptr. 517, 555 P.2d 303] (*Adams*).)

*Penalty Provisions*

Section 5814 provides: "When payment of compensation has been unreasonably delayed or refused, either prior to or subsequent to the issuance of an award, the full amount of the order, decision or award shall be increased by 10 percent. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts. Such delay or refusal shall constitute good cause under Section 5803 to rescind, alter or amend the order, decision or award for the purpose of making the increase provided for herein."[12]

Timely payment is defined, and a penalty for untimely payment of temporary (or permanent) disability is prescribed, as follows:

---

[12]Additional provisions relating to unreasonably delayed or refused payments are in the following sections:

Section 5814.1: "When the payment of compensation has been unreasonably delayed or refused prior to the issuance of an award, and the director has provided discretionary compensation pursuant to Section 4903.3, the appeals board shall award to the director a penalty to be paid by the employer in the amount of 10 percent of the compensation so provided by the director, such penalty to be in addition to the penalty imposed by Section 5814. The question of delay and the reasonableness of the cause therefor shall be determined by the appeals board in accordance with the facts."

Section 5814.5: "When the payment of compensation has been unreasonably delayed or refused subsequent to the issuance of an award by an employer which has secured the payment of compensation pursuant to subdivision (c) of Section 3700, the appeals board shall, in addition to increasing the order, decision, or award pursuant to Section 5814, award reasonable attorneys' fees incurred in enforcing the payment of compensation awarded."

Section 5814.5 applies only to political subdivisions of the state, not the state itself. (§ 3700, subd. (c).) When this section was enacted the Legislature declared:

"[T]here are inadequate incentives to ensure the prompt payment of workers' compensation benefits which have been awarded employees of political subdivisions of the state which are uninsured for their workers' compensation liability. The manner in which these employers fund their workers' compensation liability, coupled with the lack of security required for the payment of compensation, make it necessary to provide this additional incentive for these employers to promptly pay benefits which have been awarded." (Stats. 1984, ch. 806, § 2, p. 2809.)

Section 4650: "(a) If an injury causes temporary disability, the first payment of temporary disability indemnity shall be made not later than 14 days after knowledge of the injury and disability, on which date all indemnity then due shall be paid, unless liability for the injury is earlier denied.

"(b) If the injury causes permanent disability, the first payment shall be made within 14 days after the date of last payment of temporary disability indemnity. . . .

"(c) Payment of temporary or permanent disability indemnity subsequent to the first payment shall be made as due every two weeks on the day designated with the first payment.

"(d) If any indemnity payment is not made timely as required by this section, the amount of the late payment shall be increased 10 percent and shall be paid, without application, to the employee, unless the employer continues the employee's wages under a salary continuation plan, as defined in subdivision (g). . . ."

██ ██ The section 4650 penalty does not duplicate or supersede the section 5814 penalty; rather, the section 4650 penalty, which is a self-executing, strict liability provision not dependent on a finding of unreasonable delay, is intended to supplement, not replace, the section 5814 penalty. (*Rhiner* v. *Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1227 [18 Cal.Rptr.2d 129, 848 P.2d 244] (*Rhiner*).)

Discussing section 5814, the Supreme Court has pointed out: ". . . We have said that 'although denominated a "penalty," the section is to be interpreted liberally, in accordance with the general purpose of the workmen's compensation laws' of affording benefits for the protection of injured employees. [Citation.] 'The penalty . . . is designed to help an employee obtain promptly the cure or relief he is entitled to under the law, and to compel his employer to provide this cure or relief in timely fashion.' [Citation.] The penalty has been applied to virtually all types of benefits provided by the workers' compensation laws, including temporary and permanent disability indemnity . . . ." (*Adams, supra*, 18 Cal.3d at p. 229.)

After *Adams*, the Supreme Court held under section 5814 that the amount of the penalty does not vary depending on whether the unreasonable delay occurred before or after the award was issued (*Gallamore* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 821-822 [153 Cal.Rptr. 590, 591 P.2d 1242]); that the WCAB can consider the size of the delinquency to determine whether the employer had acted unreasonably, but that, if it finds

unreasonable behavior, it cannot refuse to impose the penalty on the ground that the amount of the delinquency was de minimis (*id.* at pp. 822-823); that multiple penalties should be imposed for several separate or distinct acts of delay or nonpayment (*id.* at pp. 823-824); and that the penalty must be assessed on the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld, without deductions for payments made without delay on the specific benefit awarded (*id.* at p. 827).[13] *Rhiner, supra,* 4 Cal.4th 1213 refused to reconsider *Gallamore* in light of more recent statutory developments, instead reaffirming it and holding the section 5814 penalty must be assessed against the entire amount ultimately awarded to the employee for the class of compensation in which the payment was unreasonably delayed or refused by the employer, without deduction of payments made by the employer before the formal award. (4 Cal.4th at pp. 1227-1228.)

Courts have said the "section 5814 penalty is properly characterized as part and parcel of the original compensation award." (*Anderson* v. *Workers' Comp. Appeals Bd.* (1981) 116 Cal.App.3d 954, 960 [172 Cal.Rptr. 398] [holding ". . . any subsequent penalties [are to] be assessed against the principal amount of the original award as increased by any prior penalty assessments."]; see also *Carver* v. *Workers' Comp. Appeals Bd.* (1990) 217 Cal.App.3d 1539, 1547 [266 Cal.Rptr. 718] ["The 10 percent increase . . . has been characterized as an increase in the compensation awarded to the injured worker. [Citation.] This characterization seems appropriate in light of the definition of 'compensation' in Labor Code section 3207 . . . ."]; see also *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd.* (1982) 130 Cal.App.3d 933, 941 [182 Cal.Rptr. 171] ["[E]very payment conferred by division 4 is to be considered compensation. Section 5814 falls in division 4, and the penalty it authorizes must be considered compensation . . . ."].)

Accordingly, it is clear the penalty is a part of the compensation provided for in division 4, and a WCAB award of a penalty involves " '[p]roceedings which . . . concern the recovery of compensation, [and a] right or liability "arising out of or incidental thereto" . . .' " within WCAB jurisdiction. (*Greener* v. *Workers' Comp. Appeals Bd., supra,* 6 Cal.4th at pp. 1038-1039.)

### WCAB's View of Its Jurisdiction to Impose Penalties

In *Blankenship* v. *WCAB* (1986) 51 Cal.Comp.Cases 38, 39, the Board takes the position it has "no jurisdiction to award [IDL] benefits, which are

[13]This description of *Gallamore*'s holdings is made in *Rhiner, supra,* 4 Cal.4th at pages 1219-1220, and 1225.

governed by the Government Code, other than to find that the applicant is entitled to indemnity during a period of temporary disability . . . [;] there would be jurisdiction to impose an unreasonable delay penalty if the applicant is not receiving *any* indemnity . . . [; and] jurisdiction over state employees' [IDL] program rests with the Department of Personnel Administration under Government Code section 19849.11."

This is the view the Board applied in the present case involving nonpayment of any benefit to Ellison during her period of undisputed temporary disability, April 27, 1992, through January 14, 1993. Payment was not made until May 9, 1994, nearly four months after the findings and award, and forty-two days after the correct amount of IDL was stipulated to by the parties. The Board's position in this case is:

". . . [After the January 14, 1994, findings and award], the only issue remaining with regard to temporary disability was the correct amount of the greater benefit, IDL (in contrast to temporary disability indemnity), to which [Ellison] was entitled as a state employee under the Government Code. That issue did not obviate [the State's] *duty to timely pay* [*Ellison*] at least the lesser amount of temporary disability indemnity for the period in question, a sum of almost $11,000.00, or the amount of IDL benefits which were uncontested. Even after the parties stipulated to the correct amount of IDL benefits on March 28, 1994, no benefits were paid for [Ellison's] *undisputed period of industrial disability* until 42 days later, after correspondence from [Ellison's] attorney on two separate occasions, the second of which requested penalty for unreasonable delay.

"[The State] has failed to provide any explanation whatsoever for its dilatory conduct. Nor has [the State] provided any persuasive legal authority, including case law contrary to *Blankenship, supra*, or public policy argument which would allow it to escape the consequences of such conduct. On the contrary, *to accept* [*the State's*] *argument would allow a defendant to pay no benefits to an industrially temporarily disabled worker until whenever it chose to do so, if that worker happened to be entitled to IDL benefits.*

"[The State] did not have genuine doubt from either a medical or a legal standpoint as to its liability for benefits so as to excuse the delay in payment herein. (See *Kerley* v. [*Workmen's Comp. App. Bd.*] (1971) 4 Cal.3d [223,] 273 [93 Cal.Rptr. 192, 481 P.2d 200].) *There is no disagreement as to the Board's lack of jurisdiction over IDL benefits, including imposing a penalty against such benefits, and the Board specifically refrained from taking any action with regard to IDL benefits in this case.* Thus, [the State's] discussion,

for example, as to whether IDL benefits are 'compensation' under Division 4 of the Labor Code, and therefore subject to penalty under Labor Code section 5814, is not germane herein. Moreover, *penalty was not imposed for unreasonable delay in paying IDL benefits, but for [the State's] continuing failure to pay [Ellison] any benefits for her temporary disability, despite its legal obligation to do so.* Therefore, contrary to [the State's] assertion, the Board properly acted within its jurisdiction by imposing a 10% penalty under Labor Code section 5814 against *the amount of temporary disability indemnity* [original italics] that would have been payable in this case, for [the State's] unreasonable failure to timely provide [Ellison] *any* benefits for her undisputed period of temporary disability." (Italics added.)

### *Weight to Be Accorded WCAB's Interpretation*

In the context of a ruling by the WCAB concerning its jurisdiction over a different matter, its power to award temporary total disability more than five years after an original injury (§§ 4656, 5410, 5804), the Supreme Court has said: ". . . [T]he WCAB's own determination that the workers' compensation judge lacked jurisdiction under section 4656, as amended, to award further temporary total disability is entitled to significant respect on judicial review. . . . The WCAB's interpretation of its jurisdictional authority to grant new and further temporary disability, as expressed in its decision on reconsideration, is not only persuasive on this issue, its interpretation and application of these three statutes is entitled to significant respect upon judicial review. (See *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743] ['We have generally accorded respect to administrative interpretations of a law and, unless clearly erroneous, have deemed them significant factors in ascertaining statutory meaning and purpose. [Citations.]']; *Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 470 [183 P.2d 10].)" (*Nickelsberg* v. *Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 299-300 [285 Cal.Rptr. 86, 814 P.2d 1328], fn. omitted; see also *Hartsuiker* v. *Workers' Comp. Appeals Bd.* (1993) 12 Cal.App.4th 209, 218-219 [15 Cal.Rptr.2d 719].)

### *The DuBois Case and Government Code Section 818*

*DuBois* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382 [20 Cal.Rptr.2d 523, 853 P.2d 978] (*DuBois*) held the uninsured employer fund (UEF) is not subject to payment of a penalty pursuant to section 5814 for UEF's own unreasonable delay in payment of benefits to an injured worker. A statute was in effect providing, "The Uninsured Employers Fund shall not be liable for any penalties or for the payment of interest on any awards." (§ 3716.2.)

The present case, of course, does not deal with the UEF or involve a statute of similar import. Thus, *DuBois* does not directly bear on this case.

However, *DuBois* sets forth various reasons, in addition to the statutory language of section 3716.2, for reaching its conclusion.[14] Among those reasons is Government Code section 818, which reads: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

Immediately after this quotation of the statute, *DuBois* states, "In light of the partially penal nature of section 5814, we believe that application of the statutory penalty provision to the UEF is not permitted, absent express legislative authorization." (*DuBois*, *supra*, 5 Cal.4th at p. 398.) Thus, *DuBois* suggests the section 5814 increase in the amount of the award is in the category of punitive damages for purposes of applying Government Code section 818.

However, more recently, in *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 36 [36 Cal.Rptr.2d 100, 884 P.2d 1048] (*La Jolla Beach & Tennis Club*) the court states: "The statutes carefully distinguish between 'compensation' and 'damages.' ' "Compensation"

---

[14]*DuBois* summarizes its rationale: "Although, as noted earlier, section 5814 is to be liberally construed, we previously have commented that 'the rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction.' (*Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d 288, 298.) A number of additional factors must be considered, including the absence of any express language (rendering the UEF liable for its own unreasonable delay) in the statutes defining the obligations and liability of the UEF (§§ 3716 & 3716.2; contrast § 3743, subd. (b) ['the (Self-Insurers' Security Fund) shall not be liable for the payment of any penalties assessed for any act or omission on the part of any person other than the fund,' including the penalties provided in § 5814]), the absence of an express time limit within which the UEF is to pay an award following nonpayment by an employer and the employee's demand for compensation by the UEF (§ 3716, subd. (a)), the presence in sections 3716 and 3716.2 of language limiting the liability of the UEF to the payment of those benefits that would accrue against a properly insured employer and exempting the UEF from the payment of penalties and interest on awards, the absence of express language in section 5814 indicating that the UEF may be liable under that statute, the protective purpose served by the statute, the WCAB's view that the UEF is not liable for penalties pursuant to section 5814 (see *Nickelsberg* v. *Workers' Comp. Appeals Bd.*, *supra*, 54 Cal.3d 288, 299-300; *Judson Steel Corp.* v. *Workmen's Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668-669 [150 Cal.Rptr. 250, 586 P.2d 564] [agency interpretation entitled to significant respect upon judicial review]), and the general immunity afforded governmental entities (such as the UEF) by Government Code section 818. Our examination of all of these factors leads us to conclude that the Legislature did not intend that the UEF be liable, pursuant to section 5814, for penalties premised upon its own delay, even where the delay engaged in by that entity properly may be characterized as unreasonable." (*DuBois*, *supra*, 5 Cal.4th at pp. 398-399.)

means compensation under Division 4 [the Workers' Compensation and Insurance section of the Labor Code] and includes every benefit or payment conferred by Division 4 upon an injured employee, including vocational rehabilitation, or in the event of his death, upon his dependents, without regard to negligence.' (Lab. Code, § 3207; Ins. Code, § 11630 ['As used in this chapter [Chapter 2—Workers' Compensation Policies], the term "compensation" means the benefits insured by workers' compensation insurance.'].) ' "Damages" means the recovery allowed in an action at law as contrasted with compensation.' (Lab. Code, § 3209.)"

*La Jolla Beach & Tennis Club* made this observation in the course of deciding that a workers' compensation insurer has no duty to defend a former employee's civil suit alleging wrongful termination in violation of public policy. (*La Jolla Beach & Tennis Club, supra*, 9 Cal.4th at p. 31.) This area also has nothing to do with the case at hand. However, the principle stated would appear to have general application as does the rule of jurisdiction set forth in the case: ". . . '[T]he superior court cannot award workmen's compensation benefits, and *the* [WCAB] cannot award damages for injuries.' [Citation.] The only point of concurrent jurisdiction of the two tribunals is jurisdiction to determine jurisdiction; jurisdiction once determined is exclusive, not concurrent. [Citation.]" ((*Id.* at p. 35, quoting *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 83 [293 P.2d 18], italics added.)

As in *La Jolla Beach & Tennis Club*, the Court of Appeal in *Leung* v. *Chinese Six Companies* (1992) 2 Cal.App.4th 801, 807 [3 Cal.Rptr.2d 593] (*Leung*) set forth a clear line of distinction between damages and compensation for purposes of workers' compensation law. *Leung* held that the 10 percent penalty under section 4554 applicable to an employer's willful failure to secure the payment of compensation is not recoverable in a civil action under section 3706, i.e., an action "for *damages* which substitute for the compensation that would be due an employee but for the employer's failure to secure such compensation." (2 Cal.App.4th 807, original italics.) The court explained in part that such an action under section 3706 "simply does not result in 'compensation' within the meaning of the statutes; 'compensation' is specifically defined as benefits or payments made without regard to negligence while recovery of damages in a section 3706 action requires proof of the employer's liability under tort principles (albeit with the aid of statutory presumptions and limitations lightening the employee's burden)." (2 Cal.App.4th at pp. 806-807.) Thus, *Leung* views such a penalty as "compensation," outside the scope of the *damages* recoverable in a section 3706 action.

We are concerned, of course, with the appropriate application of Government Code section 818 and its possible bearing on this case as suggested in

*DuBois, supra*, 5 Cal.4th at page 398. However, in light of the rather consistent and recent distinction made in the cases between damages and compensation (see also *ante*, p. 140), and Government Code section 818's application to "damages" only, not "compensation," we are of the view that the section is inapplicable to the section 5814 penalty in this case. We observe in this connection that *DuBois* itself, with apparent acceptance, made note of the fact the cases have characterized the 10 percent penalty " 'as an increase in the compensation awarded to the injured worker.' " (*DuBois, supra*, 5 Cal.4th at p. 396, quoting *Carver* v. *Workers' Comp. Appeals Bd., supra*, 217 Cal.App.3d at p. 1547.)

## Conclusion

We are persuaded the Board's interpretation of its authority to award the penalty in this case is not clearly erroneous and, in fact, is correct. A precept to this conclusion is the rule of liberal construction which is applicable to all aspects of workers' compensation, including penalties. (§ 3202; *Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200] [agreeing with the statement, "We think a *rule of liberal construction is applicable to* all aspects of workmen's compensation, including *penalties.*"; quoting *Davison* v. *Industrial Acc. Com.* (1966) 241 Cal.App.2d 15, 18 [50 Cal.Rptr. 76], italics added.].) This rule has been applied "to resolve a wide variety of procedural and substantive questions affecting the availability and adequacy of compensation in favor of injured employees and other applicants." (*Johnson* v. *Workers' Comp. Appeals Bd.* (1984) 37 Cal.3d 235, 241 [207 Cal.Rptr. 857, 689 P.2d 1127].)

The Board narrowly defined its authority to impose the penalty on the state, applying section 5814 only with respect to the amount of TD over which it clearly had jurisdiction. As we have said earlier in this opinion, such a penalty is a part of compensation for "temporary disability as defined in Divisions 4 . . . and 4.5 . . . ." (Gov. Code, § 19870, subd. (a); § 3207.)

The strong policy of helping the employee obtain benefits promptly and compelling the employer to timely provide the benefits (*Adams, supra*, 18 Cal.3d at p. 229) admits of no exception for one class of employee-employer relationship, that of a state worker to the state, as distinguished from the vast class of other employee-employer relationships that are subject to application of this policy. In this connection, we observe that in the context of a different penalty provision, the 50 percent (up to $10,000) penalty applicable to cases of discrimination against workers who are injured in the course and

scope of their employment (§ 132a[15]), courts have readily considered the penalty provision to be applicable to the state, though not deciding any issue about the Board's jurisdiction to award the penalty as against the state. (See *Dyer* v. *Workers' Comp. Appeals Bd.* (1994) 22 Cal.App.4th 1376 [28 Cal.Rptr.2d 30], involving state Franchise Tax Board worker; see also *Stemler* v. *Workers' Comp. Appeals Bd.* (1988) 204 Cal.App.3d 577 [251 Cal.Rptr. 364], involving state Cal. Dept. of Transportation worker.)

Moreover, the Legislature has set out in the Workers' Compensation Act various provisions, programs or benefits applicable to specified classes of state workers. (See, e.g., §§ 3212.1 [firefighters of Univ. of Cal., Cal. State Univ. and Dept. of Forestry, and certain state peace officers in active law enforcement]; 3212.2 [custodial or security officer of Dept. of Corrections, Dept. of Youth Authority and Atascadero State Hospital]; 3214 [Dept. of Corrections and Dept. of Youth Authority]; 4800 et seq. [active law enforcement members of Dept. of Justice, Cal. Highway Patrol, Univ. of Cal. Police Dept., Cal. State Univ. Police Dept.].) In light of the specific applicability of the Workers' Compensation Act and the SCIF provisions to the state (3300; Ins. Code, 11870, 11871, 11873), we cannot view the scattered provisions regarding specific classes of state employees as demonstrating a legislative purpose that other provisions of the act are applicable to only those classes of state workers. The initial definition of IDL as meaning TD "as defined in Divisions 4 . . . and 4.5" (Gov. Code, § 19870, subd. (a)) evidences an intent to grant state workers the benefits of all of those provisions, including the penalty provision in question which is contained in division 4. The WCAB unquestionably has jurisdiction over these provisions.

Accordingly, we conclude the Board was authorized to assess the penalty against the state as it did in this case.

Disposition

The order of the WCAB is affirmed.

Kremer, P. J., and Haller, J., concurred.

---

[15]Section 132a is not part of the workers' compensation provisions here under consideration. The section contains a provision conferring jurisdiction on the Board, but is silent as to its applicability to the state.