[No. F053350. Fifth Dist. Apr. 18, 2008.]

VIRGINIA BROOKS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, DEPARTMENT OF
CORRECTIONS AND REHABILITATION et al., Respondents.

1524

1526

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

### COUNSEL

Adams, Ferrone, Ferrone, John A. Ferrone and Michael Bannon for Petitioner.

Lawrence R. Whiting for California Applicants' Attorneys Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Robert W. Daneri, Suzanne Ah-Tye and David M. Goi for Respondents.

Raymond G. Fortner, Jr., County Counsel, Derrick M. Au and Jason Waller, Deputy County Counsel, for the County of Los Angeles as Amici Curiae on behalf of Respondents.

### OPINION

**VARTABEDIAN, Acting P. J.**—This court granted Virginia Brooks's petition for writ of review from the decision of the Workers' Compensation Appeals Board (WCAB) to examine whether a year of industrial disability leave (IDL) payable to state employees under Government Code sections 19869–19877.1 falls within the ambit of the two-year limitation on aggregate temporary disability payments in Labor Code section 4656, subdivision (c)(1), enacted as part of the 2004 workers' compensation reforms.[1] (Sen. Bill No. 899 (2003–2004 Reg. Sess.), chaptered as Stats. 2004, ch. 34, § 29.) We agree with the WCAB and conclude that under the current statutory scheme state employees are limited to a maximum of two years of combined temporary disability indemnity.

### BACKGROUND

The parties have stipulated to the relevant facts. On October 25, 2004, Virginia Brooks sustained an injury to her right shoulder and psyche arising

---

[1] Further statutory references are to the Labor Code unless otherwise stated.

out of and in the course of her employment as a correctional officer with the Department of Corrections and Rehabilitation (CDCR). As a state agency, the CDCR was legally uninsured for workers' compensation and contracted with the State Compensation Insurance Fund (SCIF) to adjust its workers' compensation claims. (§ 3700.)

Brooks earned an average of $1,102.99 per week as a correctional officer at the time of her injury. The SCIF determined that Brooks would be paid $735.66 per week of IDL indemnity over one year and provided her with workers' compensation temporary disability (TD) of $728.00 per week during the following year through October 26, 2006. While Brooks thereafter remained totally temporarily disabled, SCIF stopped providing TD payments after two years from the date of her injury.

In March 2007, Brooks brought the matter for a hearing before a workers' compensation administrative law judge (WCJ) contending she was entitled to another year of TD because the two-year limitation on those benefits established under section 4656, subdivision (c)(1), as amended in 2004, did not begin running until October 27, 2005, when her initial year of IDL payments ceased. The WCJ disagreed with Brooks, reasoning IDL is the functional equivalent of TD and that the new statutory limit authorized only 104 weeks of combined IDL and TD indemnity.

Brooks petitioned the WCAB for reconsideration, claiming IDL is not TD because "IDL payments are made under different rules, to a limited class of employees, at different rates, and for different periods." In a report and recommendation to the WCAB, the WCJ primarily relied on the statutory definition under Government Code section 19870, subdivision (a) providing that IDL "means temporary disability as defined in" the Labor Code's workers' compensation provisions. The WCAB summarily denied reconsideration by adopting and incorporating the WCJ's reasoning.

## DISCUSSION

Brooks contends the state's IDL and TD programs are mutually exclusive and independent benefits payable to temporarily disabled state employees. While the parties agree Brooks appropriately received an initial year of IDL and at least one additional year of TD, Brooks argues she is entitled to a second year of TD, for a total of three years of indemnity benefits, while she remained temporarily disabled. Given the parties' stipulations and lack of any dispute as to the underlying facts, Brooks presents a pure question of law reviewable by this court de novo. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*); *Signature Fruit Co. v. Workers' Comp. Appeals Bd.*

(2006) 142 Cal.App.4th 790, 795 [47 Cal.Rptr.3d 878] (*Signature Fruit*).) We nevertheless accord " 'significant respect' " to the WCAB's interpretation of workers' compensation statutes " 'unless clearly erroneous.' " (*Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1174 [77 Cal.Rptr.2d 552, 959 P.2d 1228].) Considering a seasonal worker's ability to receive TD during her regular unemployment season, this court summarized the appropriate standard of review in *Signature Fruit*: "In reviewing a workers' compensation provision, we give great weight to the WCAB's interpretation unless it contravenes legislative intent as evidenced by clear and unambiguous statutory language. [Citation.] In addition, we look to the overall scheme of which a provision is a part and consider the consequences that will flow from a particular construction so as to achieve wise policy rather than mischief or absurdity. [Citation.] We must also consider fairness, reasonableness, and proportionality of an enactment and the purposes sought to be achieved. [Citation.] As with other workers' compensation provisions, statutes regarding temporary disability are construed liberally in favor of granting benefits to injured workers. (§ 3202; *Lauher, supra*, 30 Cal.4th at p. 1290.) Even a liberal interpretation, however, will not extend temporary disability benefits where they are not authorized. (*Lauher*, at p. 1293.)" (*Signature Fruit, supra*, 142 Cal.App.4th at p. 795.)

## A. *Industrial Disability Leave*

■ Originally enacted under Government Code former section 18122 in 1974 (Stats. 1974, ch. 374, p. 735) as part of the Berryhill Total Compensation Act, Government Code section 19871 authorizes an IDL benefit for state officers or employees who are temporarily disabled by illness or injury arising out of and in the course of their employment. (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1979) 88 Cal.App.3d 43, 52 [152 Cal.Rptr. 153].) Except for certain public safety workers falling within a separate disability leave of absence program, IDL applies to all compensated state officers and employees belonging to the Public Employees' Retirement System or the State Teachers' Retirement System and all non-civil-service employees of the Legislature.[2] (§ 4850; Gov. Code, § 19869.)

■ IDL provides industrially injured state employees with up to 52 weeks of indemnity benefits. (Gov. Code, § 19871, subd. (a).) Those benefits normally begin on the fourth day after a state employee leaves work due to the injury, but apply from the first day the employee leaves work if the injury

---

[2] IDL benefits may be superseded by a negotiated labor agreement as set forth in a legislatively adopted memorandum of understanding (MOU). The parties agreed at oral argument that the MOU applicable to Brooks is consistent with the statutory IDL provisions. (See Gov. Code, §§ 19870, 19871, subd. (b), 19871.1, subd. (b), 19872, subd. (c), 19873, subd. (b), 19874, subd. (b), 19875, subd. (c), 19876, subd. (b), 19877.1, subd. (b).)

causes disability in excess of 14 days, if the employee requires hospitalization, or if the injury is the result of a criminal act of violence. (Gov. Code, § 19875, subds. (a), (b).) For the first 22 days, the employee receives his or her full salary less the amount of the employee's exemption withholdings for federal income, state income, and Social Security taxes as of the date of disability. (Gov. Code, § 19871, subd. (a).) IDL is mandatory for the first 22 days of disability unless it would result in an amount less than that which would be provided by TD. (Cal. Code Regs., tit. 2, § 599.759.) The employee receives two-thirds of his or her regular salary throughout the remainder of 52 weeks, during which time the employee may also supplement IDL payments with accrued leave time in an amount approximating the employee's full net pay. (Gov. Code, §§ 19871, subd. (a), 19872, subd. (b).) An employee on IDL is also entitled to continue receiving "all employee benefits which he or she would have received had he or she not incurred disability." (Gov. Code, § 19871.1, subd. (a).) If an injury results from particularly egregious circumstances not applicable here, some state employees are further eligible for enhanced IDL providing the employee's full net take-home salary for the entire 52 weeks. (Gov. Code, § 19871.2; Cal. Code Regs., tit. 2, § 599.769.)

■ An employee's first level of administrative remedy for complaints arising out of IDL lies with the employing state department. (Cal. Code Regs., tit. 2, § 599.768.) Thereafter, complaints arising under the Government Code, such as those related to the payment of IDL and leave administration, must be appealed to the Department of Personnel Administration. (Cal. Code Regs., tit. 2, § 599.768, subd. (b).)

### B. *Workers' Compensation Temporary Disability*

■ "Pursuant to state constitutional mandate, the California Workers' Compensation Act provides for a compulsory scheme of employer liability without fault for injuries arising out of and in the course of employment." (*Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 85 [58 Cal.Rptr.2d 190, 925 P.2d 1309].) Unlike IDL, workers' compensation benefits apply to "any or all" California workers and represent the "social public policy of this State, binding upon all departments of the state government." (Cal. Const., art. XIV, § 4.) Thus, the "State and every State agency" is expressly included within the definition of an "employer" under the Workers' Compensation Act. (§ 3300, subd. (a).)

■ The Labor Code's workers' compensation provisions nowhere define the term "temporary disability." (See 1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (rev. 2d ed. 2007) § 7.01[1], p. 7-3.) Notwithstanding the lack of a statutory definition, appellate decisions interpreting the workers' compensation laws have nevertheless established that a

"temporary disability is an impairment reasonably expected to be cured or materially improved with proper medical treatment." (*Signature Fruit, supra*, 142 Cal.App.4th at p. 795, citing *Western Growers Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 235 [20 Cal.Rptr.2d 26].) TD benefits provide "a substitute for lost wages during a period of temporary incapacity from working." (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 753 [7 Cal.Rptr.2d 808, 828 P.2d 1195].)

■ A state employee may not receive TD or accrued leave benefits while also receiving IDL. (Gov. Code, § 19872; Cal. Code Regs., tit. 2, § 599.759.) Similar to IDL, TD benefits commence on the fourth day after the injured employee leaves work, but apply retroactively to the first day if the disability extends beyond 14 days or the employee requires hospitalization. (§ 4652.) TD payments are calculated at "two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market." (§ 4653.) As with IDL, an employee may elect to supplement TD payments up to his or her full salary or wage with accrued leave time. (Gov. Code, §§ 19863, 19874.) Unlike IDL, however, the Legislature has artificially restricted an injured worker's "average weekly earnings" for purposes of calculating TD to statutorily defined minimum and maximum levels; during Brooks's injury in 2004, maximum average earnings were limited to $1,092 per week. (§ 4453, subd. (a)(9).) Thus, although Brooks's stipulated $1,102.99 weekly income as a correctional officer at the time of her injury slightly exceeded the statutory maximum average weekly earnings rate, she was entitled to only two-thirds of $1,092, or $728, of TD indemnity.

■ After first seeking a departmental administrative remedy, an industrially injured state employee may appeal to the WCAB "on matters within the jurisdiction of the Worker's Compensation Act of the Labor Code." (Cal. Code Regs., tit. 2, § 599.768, subd. (a).) "Such matters include but are not limited to determination of liability for provision of medical care, temporary disability payments, vocational rehabilitation, and related items." (*Ibid.*)

C.  *Senate Bill No. 899's Limitation on Workers' Compensation Temporary Disability*

■ Government Code section 19874, subdivision (a) establishes that a state employee who continues to be temporarily disabled after exhausting

IDL is entitled to workers' compensation benefits, which include TD indemnity.[3] TD payments generally end when the employee returns to work, is deemed able to return to work, or achieves permanent and stationary status and becomes eligible for permanent disability. (*Lauher, supra*, 30 Cal.4th at pp. 1291–1292; *Signature Fruit, supra*, 142 Cal.App.4th at p. 802.) The parties agree, however, that none of these traditional grounds for terminating Brooks's TD applied in the present case. The WCAB instead relied on section 4656, subdivision (c)(1) as amended in 2004, which now provides: "Aggregate disability payments for a single injury occurring on or after April 19, 2004, causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment."[4]

Brooks contends that under revised section 4656, subdivision (c)(1), she was entitled to 104 weeks of TD following her initial year of IDL benefits. She argues the "statutory scheme is clear" that the Legislature intended both benefit mechanisms to be distinct sources of indemnity for state employees because IDL and TD are set forth in different codes, i.e., IDL is governed by the Government Code and TD by the Labor Code, and because section 4656's two-year limit on TD benefits does not reference the term "IDL." She claims that if IDL and TD comprised the same benefit, there would be no need for Government Code section 19872 to provide that a state employee may not receive both IDL and TD concurrently or for Government Code section 19874, subdivision (a) to state that an employee who has exhausted IDL may subsequently obtain TD. Brooks further asks this court to rely on the lack of any reference in Senate Bill No. 899's (2003–2004 Reg. Sess.) preamble suggesting a new limitation on state employee IDL benefits and on

---

[3] Government Code section 19874, subdivision (a), provides, "If the employee continues to be temporarily disabled after termination of benefits under this article, he or she shall be entitled to the benefits provided by divisions 4 (commencing with Section 3201) and 4.5 (commencing with Section 6100) of the Labor Code and to payments under Section 19863." Reference to divisions 4 and 4.5 of the Labor Code are to the workers' compensation laws, while Government Code section 19863 provides for the coordination of TD and accumulated sick, vacation, overtime, or annual leave benefits.

[4] Aggregate temporary disability payments may be extended for up to 240 weeks, but only if the employee suffers from certain enumerated conditions not applicable to Brooks. (§ 4656, subd. (c)(3); see 1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation, *supra*, § 7.02[1], p. 7-9.) At the time of Brooks's October 25, 2004, injury, section 4656, former subdivision (c)(1), actually began: "Aggregate disability payments for a single injury occurring on or after the effective date of this subdivision," with an April 19, 2004, effective date of Senate Bill No. 899 (2003–2004 Reg. Sess.). Recent legislation, effective January 1, 2008, inserted the specific date into the statute and now permits aggregate temporary disability payments to extend up to 104 compensable weeks over five years, instead of two years, from the date of injury. (§ 4656, subd. (c)(1), (2) as amended by Stats. 2007, ch. 595.)

section 3202's overriding mandate to construe workers' compensation provisions liberally "with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

■ We agree that the statutory scheme is clear, but not with Brooks's conclusion that IDL and TD are distinct classes of benefits that do not overlap. Despite Brooks's arguments to the contrary, the Legislature has already answered her inquiry. Located within the IDL provisions, Government Code section 19870, subdivision (a) expressly provides that IDL "means temporary disability."[5] Because IDL is statutorily defined as the equivalent of TD, then the two-year limitation under section 4656, subdivision (c)(1), necessarily must apply to both IDL and TD. Furthermore, the two-year limitation does not restrict itself only to TD benefits payable under the Workers' Compensation Act or the Labor Code, as it more broadly applies to "*Aggregate* disability payments for a single injury." (§ 4656, subd. (c)(1), italics added.) ■ Finding the statutory scheme unambiguous, we need not resort to interpreting alternate statutory constructions or to section 3202's requirement to construe benefits liberally towards extending benefits. (*Brodie v. Workers' Comp. Appeals Bd.* (2007) 40 Cal.4th 1313, 1332 [57 Cal.Rptr.3d 644, 156 P.3d 1100] ["Section 3202 is a tool for resolving statutory ambiguity where it is not possible through other means to discern the Legislature's actual intent."].)

In reaching the same conclusion, the WCAB, by adopting the WCJ's report and recommendation, found support in the Fourth Appellate District's decision in *State of California v. Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128 [51 Cal.Rptr.2d 606] (*Ellison*), also involving the SCIF and a state correctional officer. Following initial hearings before a WCJ, the SCIF agreed to provide the employee with seven and a half months of IDL. (*Id.* at p. 131.) After the SCIF failed to provide the benefits as agreed, the employee petitioned the WCAB demanding payment plus a 10 percent penalty pursuant to former section 5814.[6] (*Ellison, supra,* 44 Cal.App.4th at pp. 131–132.) The SCIF subsequently paid the IDL, but the employee continued to seek the penalty award. (*Id.* at p. 132.) Largely agreeing with the employee, the

---

[5] Government Code section 19870, subdivision (a) provides: " 'Industrial disability leave' means temporary disability as defined in Divisions 4 (commencing with Section 3201) and 4.5 (commencing with Section 6100) of the Labor Code and includes any period in which the disability is permanent and stationary and the disabled employee is undergoing vocational rehabilitation."

[6] At the time of *Ellison,* former section 5814 imposed a 10 percent penalty "of the entire amount ultimately awarded for the particular class of benefit which has been unreasonably delayed or withheld." (*Gallamore v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 815, 827 [153 Cal.Rptr. 590, 591 P.2d 1242].) Amended by Senate Bill No. 899 (2003–2004 Reg. Sess.), section 5814 instead now imposes a penalty of 25 percent, up to $10,000, based only upon "the amount of the payment unreasonably delayed or refused." (Stats. 2004, ch. 34, § 43.)

WCAB found " 'no excuse for this delay in payment of temporary disability per Government Code section 19871' " and awarded the 10 percent penalty. (*Ibid.*) Departing from the employee's position, the WCAB calculated the penalty award on the amount of TD that would have been due during the disability period rather than on the employee's higher IDL rate. (*Ibid.*)

After analyzing the jurisdictional roles of the WCAB and the Department of Personnel Administration, the appellate court in *Ellison* agreed with the WCAB's exercise of authority to impose the penalty based on TD even though the employee actually received IDL. (*Ellison, supra,* 44 Cal.App.4th at pp. 145–146; see also *Blankenship v. Workers' Comp. Appeals Bd.* (1986) 51 Cal.Comp.Cases 38, 39 [writ den.].) Acknowledging that the WCAB maintained jurisdiction over TD but not IDL, the court based its decision in part "on the Legislature's definition of IDL as identical with temporary disability indemnity (TD) under the Labor Code (Gov. Code, § 19870, subd. (a)) . . . ." (*Ellison, supra,* at p. 130, fn. omitted.)

Brooks claims *Ellison*'s conclusion that IDL is identical to TD is mere dicta, and that the case instead supports her proposition that an employee is first entitled to a year of IDL before receiving an additional two years of TD. Brooks relies on the *Ellison* court's description that "state workers eligible for IDL are entitled to this benefit, rather than TD, until the IDL is exhausted, at which point the employee who continues to be temporarily disabled is entitled to receive TD." (*Ellison, supra,* 44 Cal.App.4th at p. 135.) According to Brooks, "This language is clear—first, the employee gets the one, and then the employee gets the other."

Although the court in *Ellison* relied on multiple grounds for reaching the conclusion that the WCAB could award penalties based on the employee's TD rate where the state did not provide any form of temporary disability indemnity to its injured worker, we find the court's conclusion that IDL constitutes temporary disability both necessary to the case and more significantly, expressly set forth by Government Code section 19870, subdivision (a). Moreover, while IDL constitutes a form of temporary disability, the benefits are not necessarily calculated at the same rate because IDL is not limited by the artificial "average weekly earnings" rate and an employee receiving IDL continues to receive his or her other state benefits. Thus, the *Ellison* court's assertion that an employee first receives IDL and subsequently receives TD simply describes that an industrially injured state employee first receives temporary disability indemnity at the IDL rate, including state benefits, and then at the TD rate.

The WCAB reached a similar conclusion to the present case in *Salmon v. Workers' Comp. Appeals Bd.* (2007) 72 Cal.Comp.Cases 1042 (writ den.)

(*Salmon*). In *Salmon*, a Department of Transportation employee received 15 months of IDL payments followed by TD indemnity through two years from the date of injury. The parties disputed whether the two-year limitation on TD under section 4656, as amended by Senate Bill No. 899 (2003–2004 Reg. Sess.), applied to IDL and if any such limitation was constitutional. Denying reconsideration, the WCAB effectively agreed with the WCJ's reasoning that IDL benefits are the same as TD for purposes of applying the two-year limitation set forth in section 4656, subdivision (c)(1). (*Salmon, supra*, 72 Cal.Comp.Cases at p. 1043.)

In a supplemental briefing request, this court asked the parties whether a 1994 amendment to the basic IDL entitlement statute, Government Code section 19871, subdivision (a), removing language that IDL is "in lieu of workers' compensation temporary disability payments and payments under Section 19863" carried any legal significance as to whether IDL constitutes temporary disability for purposes of the two-year limitation under section 4656, subdivision (c).[7] (Assem. Bill No. 810 (1993–1994 Reg. Sess.) § 2, chaptered as Stats. 1994, ch. 1027, § 2, p. 6244.) The following analysis prepared for an August 17, 2004, Assembly committee hearing and repeated in substance throughout numerous reports prepared by the Assembly, Senate, and Department of Personnel Administration describes the purpose behind the legislation:

"IDL is a salary continuation benefit for state employees which currently may be used in lieu of temporary disability (TD) payments.

"IDL not only provides a higher rate of basic income to injured workers than temporary disability, it allows an employee to stay on the employer's payroll and continue to receive all medical benefits. Because the statute allowed a choice of benefits, each employee had to be provided with an election form outlining three options: (a) TD without supplementation, (b) TD with supplementation, and (c) IDL.

"This election process was time consuming and delayed the payment of benefits. Additionally, the choice made by the employee could be changed at certain intervals during the process, further complicating the payment process.

---

[7] Before the amendment, Government Code section 19871, former subdivision (a) began: "Except as provided in Section 19871.2, when a state officer or employee is temporarily disabled by illness or injury arising out of and in the course of state employment, he or she shall become entitled, regardless of his or her period of service, to receive industrial disability leave and payments, *in lieu of workers' compensation temporary disability payments and payments under Section 19863,* for a period not exceeding 52 weeks within two years from the first day of disability." (Italicized language removed eff. Jan. 1, 1995.)

"As a result of collective bargaining agreements with several of the state employees' unions, a new provision was added to the IDL program that allows state employees to supplement the basic benefit with accrued leave credits (e.g., vacation, sick leave). The collective bargaining agreement also stipulated that the employee can no longer elect TD as an option for the period of time he/she is eligible for IDL (52 weeks within a two-year period), and that the supplementation combined with the basic IDL benefit could not exceed the employee's normal net pay.

"This bill extends the agreement in IDL to state management employees." (Assem. Com. on Public Employees, Retirement and Social Security, Analysis of Assem. Bill No. 810 (1993–1994 Reg. Sess.) as amended Apr. 4, 1994, pp. 1–2.)

We agree with the SCIF that the removal of the "in lieu of" language from Government Code section 19871 was a ministerial, and not a substantive, change as it relates to whether IDL constitutes a form of temporary disability. As the bill analysis reflects, one of the goals of the legislation was to speed the commencement of payments to industrially injured state workers by removing the delay associated with the employee election between IDL and TD. Additional goals expressed in the legislative history included eliminating state employees' ability to earn more than their net pay while on TD with supplementation and carrying over the new collectively bargained IDL provisions to state management employees. In enacting the legislation preventing the employee from choosing between IDL and TD, there was no longer any need in Government Code section 19871 to expressly state that the employee was entitled to receive IDL "in lieu of" TD. If the Legislature wished to differentiate IDL from TD as entirely distinct and cumulative classes of benefits, Government Code section 19870 defining IDL as TD could have been amended to reflect this intent. As amicus curiae County of Los Angeles in support of respondents articulates, "Instead, the removal of the subject language is consistent with the Legislature's plan to eliminate the election of TD, which was causing administrative problems in the system, and giving a windfall for employees choosing TD and supplementing with accrued leave."

According to Brooks, the removal of the ability of state employees to choose between IDL and TD adopted by the 1994 amendment demonstrates that the benefits carry different purposes and that TD begins only after the IDL "salary continuation benefit" first runs its course. Brooks believes this legislative bill analysis further confirms that IDL is a form of salary continuation that is a "distinct and enhanced benefit" from TD.

Brooks draws support for the proposition that a salary continuation benefit does not constitute TD from *City of Oakland v. Workers' Comp. Appeals Bd.*

(2007) 72 Cal.Comp.Cases 249 (writ den.) (*City of Oakland*), where the WCAB concluded the 104-week limitation for payment of TD indemnity set forth in section 4656 does *not* include the period full salary and benefits are paid to certain public safety workers while disabled as provided under section 4850. The WCAB concluded in *City of Oakland,* " 'While salary continuation benefits paid pursuant to section 4850 may be considered compensation, they are clearly not temporary disability benefits and [are] not interchangeable with temporary disability benefits.' " (*City of Oakland, supra,* 72 Cal.Comp.Cases at p. 252.)

While we note that the specific issue presented in *City of Oakland* is not before us and we therefore make no finding as to the propriety of that decision,[8] the section 4850 salary continuation benefit significantly differs from IDL. For example IDL, like TD, is payable only during an industrially related temporary disability (Gov. Code, 19870, subd. (a)), while a public safety worker continues to receive his or her full salary and benefits regardless of whether an industrial disability causes temporary or permanent disability (§ 4850, subd. (a)). Most significantly for our purposes, the Legislature has expressly established in Government Code section 19870, subdivision (a) that IDL means TD, while no such comparable provision exists defining public safety worker disability leave as TD.

Brooks filed a request to consolidate her case with an undecided petition for writ of review pending before this court in *Wiley v. Workers' Comp. Appeals Bd.* (F053859). Both cases ask whether the two-year limitation on TD benefits under section 4656, subdivision (c)(1) applies to IDL benefits, although *Wiley* entails the application of enhanced IDL rather than regular IDL. Brooks does not set forth any explanation as to how consolidation will expedite or simplify resolution of the matters.[9] We will, however, take judicial notice of the WCAB's opinion and decision following reconsideration in *Wiley* solely for the purpose of assessing the WCAB's "contemporaneous interpretation and application of the workers' compensation laws." (*Smith v. Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [94 Cal.Rptr.2d 186]; see Evid. Code, § 452, subd. (c).)

We are unclear why Brooks has asked this court to consider *Wiley.* In our observation, the decision only serves to demonstrate the WCAB's consistent interpretation that the two-year limitation under section 4656 incorporates benefits paid under the IDL provisions. Reversing the decision of its WCJ, the WCAB in *Wiley*—as in *Salmon* and here in Brooks's case—concluded a

---

[8] " 'The practice of distinguishing one case from another is based, after all, on the assumption that the holding of an appellate court is limited to the facts of the case before it.' " (*Signature Fruit, supra,* 142 Cal.App.4th at p. 801.)

[9] Brooks's November 26, 2007, "Request for Consolidation" is therefore denied.

state employee is entitled to only 104 weeks of temporary disability indemnity, whether consisting of IDL, enhanced IDL, or TD, because, as the WCAB again stated in *Wiley*, "the Government Code expressly defines IDL as temporary disability."

The California Applicants' Attorneys Association (CAAA) has filed an amicus curiae brief in support of Brooks. The CAAA claims the WCAB exceeded its jurisdiction by interpreting the Government Code and limiting IDL benefits. CAAA points to the WCAB's limited role over workers' compensation proceedings (§ 5300) and the Department of Personnel Administration's power to hold hearings "concerning all matters relating to the department's jurisdiction" including personnel-related matters. (Gov. Code, § 19815.4, subd. (e); see *id.*, § 19816, subd. (a).) Contrary to the CAAA's position, however, we do not view the WCAB's consideration of the definition of IDL in the Government Code beyond the WCAB's purview, especially where the Government Code expressly cross-references the Labor Code's workers' compensation provisions. Moreover, the WCAB here only determined Brooks's right to receive continued TD, not IDL, beyond two years from the date of her injury.

The CAAA also disagrees that the definition in Government Code section 19870, subdivision (a) providing that IDL "means temporary disability" refers to temporary disability indemnity. Pointing to a lack of statutory definition of temporary disability in the Labor Code, the CAAA suggests the IDL term instead incorporates a medical definition of temporary disability, representing that physical state during which an employee is unable to work and before the employee becomes permanent and stationary, rather than a particular workers' compensation benefit. CAAA somehow reaches the conclusion this distinction "maintains the balance between compensation under workers' compensation laws for periods of temporary disability and compensation under the Government Code for periods of IDL." However, the Government Code defines "industrial disability leave," not the term "industrial disability." It would be illogical, as well as grammatically incorrect, for the Legislature to characterize a disability leave program as a physical state.

The CAAA additionally makes the policy argument that the WCAB's determination will negatively impact the abilities of injured state employees to care for their families and that, "Rather than placing the burden of compensation on the employer, said injured workers would be forced to look at various programs funded by the taxpayers for financial relief." We cannot disagree with the CAAA that the legislative scheme may, in many cases, limit the ability of injured workers to care for their families; however, this is true for all injured workers in the state, whether publicly or privately employed. Moreover, CAAA forgets that whether the state pays IDL, TD,

unemployment insurance, or state disability insurance, the various programs are *all* funded by the taxpayers in the case of industrially injured state employees. Providing a third year of temporary disability indemnity to industrially injured state employees does not relieve the state of any financial responsibility simply because the funds are administered through the SCIF rather than the Employment Development Department. Regardless, such budgetary decisions are best made by the Legislature, not the courts. (*Marsh v. Workers' Comp. Appeals Bd.* (2005) 130 Cal.App.4th 906, 917 [30 Cal.Rptr.3d 598].) Accordingly, we conclude the WCAB appropriately decided Brooks was entitled to no more than one year of TD following the one year of IDL that she received.

## DISPOSITION

The WCAB's order denying reconsideration is affirmed. The parties shall bear their own costs on appeal.

Cornell, J., and Gomes, J., concurred.

Petitioner's petition for review by the Supreme Court was denied July 30, 2008, S163769. George, C. J., did not participate therein.