Filed 8/14/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, | E079076 |
| Petitioner, | (WCAB No. ADJ1360597) |
| v. | OPINION |
| WORKERS' COMPENSATION APPEALS BOARD and MICHAEL AYALA, | |
| Respondents. | |

ORIGINAL PROCEEDINGS; petition for writ of review. Annulled and remanded.

Carla R. Anene, Mark Beatty, Mary R. Huckabaa, A. Gina Hogtanian, and Tariq Ashrati, for Petitioner.

Allison J. Fairchild for Respondent, Workers' Compensation Appeals Board.

Adams, Ferrone, Ferrone and Michael T. Bannon for Respondent, Michael Ayala.

In workers' compensation law, if a worker is injured because of the employer's serious and willful misconduct, the "compensation" the worker is entitled to increases by one half. The statute defining "compensation" limits the term to benefits or payments

1

provided by Division 4 of the Labor Code. In this writ proceeding, we find that "compensation" does not include industrial disability leave, which is provided by the Government Code, and therefore cannot be increased by one half in cases of serious and willful employer misconduct.[1]

## BACKGROUND

While at his job as a correctional officer at the Lancaster State Prison in August 2002, respondent Michael Ayala was severely injured in a preplanned attack by inmates. He filed a workers' compensation claim and alleged that the injury was caused by the serious and willful misconduct of his employer, petitioner California Department of Corrections and Rehabilitation (CDCR). Such an allegation is significant because section 4553 provides that "[t]he amount of compensation otherwise recoverable shall be increased one-half . . . where the employee is injured by reason of serious and willful misconduct" by the employer. Ayala and CDCR agreed that the injury caused Ayala 85 percent permanent disability, but they could not agree whether CDCR engaged in serious and willful misconduct.

Nearly two decades later—the record does not show the reasons for delay—a workers' compensation judge found that CDCR did not engage in serious and willful misconduct. However, on reconsideration, respondent Workers' Compensation Appeals Board (the Board) rescinded the workers' compensation judge's decision and reversed, finding that CDCR had engaged in serious and willful misconduct. (See *Argonaut Ins.*

_____

[1] Undesignated statutory references are to the Labor Code.

2

*Co. v. Workmen's Comp. Appeals Bd.* (1967) 247 Cal.App.2d 669, 673 ["Reconsideration is, in effect, an appeal to the Board"].) Over a dissent, a Board majority found that CDCR "failed to act on a credible threat of inmate violence that was specifically reported to be planned for the day of the attack and took the facility off lockdown despite this threat even though it possessed additional information . . . that this had long been planned."

The Board's determination established Ayala's entitlement to an additional 50 percent of "compensation otherwise recoverable" per section 4553. Ayala and CDCR disagreed, however, about what constituted the "amount of compensation otherwise recoverable" under that section. We will sometimes refer to this amount as the "base compensation."

Ayala contended that, for the period before his permanent disability, his base compensation was his full salary. He was paid his full salary because he was on industrial disability leave and enhanced industrial disability leave, which, as we describe below, are alternatives to temporary disability. CDCR, on the other hand, contended that industrial disability leave benefits, enhanced or not, are not "compensation" as the term is statutorily defined. Thus, in CDCR's view, the base compensation was only what Ayala would have been entitled to on temporary disability. Assuming that Ayala would have been entitled to temporary total disability, the base compensation would have been two-thirds of his salary, subject to statutory limits. (See §§ 4453, 4653.)

The workers' compensation judge agreed with CDCR and found that the base compensation was what Ayala would have been paid in temporary disability. But on reconsideration, the Board again rescinded and reversed the workers' compensation judge's decision, this time finding that the base compensation was what Ayala was paid on industrial disability leave and enhanced industrial disability leave.

We granted CDCR's petition for a writ of review pursuant to section 5950. We now hold that industrial disability leave and enhanced industrial disability leave are not "compensation" as that term is used in section 4553 and annul the Board's contrary decision.

DISCUSSION

We start with section 4553 itself. In full, it states that "[t]he amount of compensation otherwise recoverable shall be increased one-half, together with costs and expenses not to exceed two hundred fifty dollars ($250), where the employee is injured by reason of the serious and willful misconduct of any of the following: [¶] (a) The employer, or his managing representative. [¶] (b) If the employer is a partnership, on the part of one of the partners or a managing representative or general superintendent thereof. [¶] (c) If the employer is a corporation, on the part of an executive, managing officer, or general superintendent thereof." As this litigation established that CDCR committed serious and willful misconduct, our focus is on what the phrase "compensation otherwise recoverable" includes.

4

Section 4553 is part of Division 4 of the Labor Code, which begins at section 3200 and ends at section 6002. Section 3207, entitled "Compensation," states that "'[c]ompensation' means compensation under this division and includes every benefit or payment conferred by this division upon an injured employee, or in the event of his or her death, upon his or her dependents, without regard to negligence."

The definition is as capacious as it is circular. It defines "compensation" as "compensation" and makes clear that the term includes every *type* of payment to the employee.[2] But the definition contains an express limitation. "Compensation" under section 3207 must be provided pursuant to Division 4 of the Labor Code. In its one sentence, the definition says this twice: compensation is "compensation *under this division*," and it "includes every benefit or payment conferred *by this division*." Thus, temporary disability payments are unambiguously "compensation." They are provided by Division 4 of the Labor Code. (§§ 4653-4654.)

---

[2] The definition dates to California's first compulsory worker's compensation law, the 1913 Boynton Act. (Stats. 1913, ch. 176, § 2(3) ["The term 'compensation' means compensation under this act and includes every benefit or payment conferred by sections twelve to thirty-six, inclusive, of this act upon an injured employee, or in the event of his death, upon his dependents, without regard to negligence"]; see *Mathews v. Workmen's Compensation Appeals Board* (1972) 6 Cal.3d 719, 729-730 [describing early history of California's compensation law].) The definition's origin appears to be to have ensured that workers' compensation was limited to the compensation defined under the workers' compensation laws, rather than by some other source. (See Stats. 1913, ch. 176, § 12, subd. (a) ["Liability for the compensation provided by this act, in lieu of any other liability whatsoever, shall, without regard to negligence, exist against an employer for any personal injury sustained by his employees by accident arising out of and in the course of the employment"].) That is, the definition appears to expressly acknowledge that it is to be understood as a term of art, a phrase "'having specific, precise meaning in a given specialty'" (*People v. Gonzales* (2017) 2 Cal.5th 858, 871, fn. 12).

Equally unambiguous, though, is that industrial disability leave benefits are not "compensation," as such benefits are not provided by Division 4 of the Labor Code. They in fact are provided outside of the Labor Code altogether. Supplied by section 19871 of the Government Code, industrial disability leave is an alternative to temporary disability and is available to certain state officers and employees, such as those who are members of the Public Employees' Retirement System (Gov. Code, § 19869).[3]

Industrial disability leave provides an employee his or her full salary (net of certain taxes), but only for 22 days; after 22 days, the pay becomes two-thirds of full pay. (Gov. Code, § 19871, subd. (a).) However, a subset of eligible workers, defined in the Government Code as "excluded employees," are entitled to receive enhanced industrial disability leave. (Gov. Code, §§ 19871.2, 3527, subd. (b); Cal. Code Regs., tit. 2, § 599.769.) Enhanced industrial disability leave extends the period of full pay from 22 days to one year. (Gov. Code, § 19871.2.) If a worker continues to be temporarily disabled after industrial disability leave and enhanced industrial disability leave benefits terminate, then temporary disability payments begin. (Gov. Code, § 19874, subd. (a).)[4]

---

[3] A substantially similar industrial disability leave program is available to certain California State University employees. (Ed. Code, §§ 89529-89529.11.)

[4] Although industrial disability leave benefits "may be superseded by a negotiated labor agreement as set forth in a legislatively adopted memorandum of understanding" (*Brooks v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1522, 1528, fn. 2; see, e.g., Gov. Code, § 19871, subd. (b)), the record shows no such memorandum of understanding applicable here. The parties do not dispute that Ayala was an employee entitled to both industrial disability leave and enhanced industrial disability leave.

*[footnote continued on next page]*

6

"Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) "As in all problems of statutory interpretation, it is appropriate to begin with the words of the provision to be construed, as these words are generally 'the best indicator of legislative intent.'" (*Rhiner v. Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1217.) "If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs." (*Day v. City of Fontana*, *supra*, at p. 272.)

There is no ambiguity here. "Compensation," as the term is used in section 4553, includes only items provided by Division 4 of the Labor Code, but industrial disability leave[5] is provided by the Government Code. Accordingly, the "amount of compensation otherwise recoverable" under section 4553 does not include industrial disability leave.

If the legal slate were blank, we would end our discussion here. However, the Board concluded that section 4553 base compensation includes industrial disability leave, mainly relying on *Brooks v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1522

---

We note that several types of law enforcement personnel have alternative disability leave benefits that are provided by Division 4 of the Labor Code and that appear similar to what enhanced industrial disability leave provides. (E.g., §§ 4800, 4800.5, 4806, 4850, subd. (b); see also Gov. Code, § 19869 [industrial disability leave rules do "not apply to state officers and employees who are included in the provisions of Article 6 (commencing with Section 4800) of Chapter 2 of Part 2 of Division 4 of the Labor Code"].) This case does not address the benefits provided under those provisions.

[5] For clarity, we hereinafter use the term "industrial disability leave" to refer to both industrial disability leave and enhanced industrial disability leave, as the distinctions between the two do not affect our analysis.

(*Brooks*). As we will discuss, although *Brooks* construed a different statute, its reasoning could support a conclusion that base compensation includes industrial disability leave.

*Brooks* addressed section 4656, subdivision (c)(1), which states that "[a]ggregate disability payments for a single injury occurring on or after April 19, 2004, causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment." At issue was whether the year of industrial disability leave payments the worker received counted toward the statute's two-year limitation or whether the limitation period started only when industrial disability leave stopped and temporary disability payments began. *Brooks* held that the two-year limitation period began when industrial disability leave started. (*Brooks*, *supra*, 161 Cal.App.4th at p. 1526.)

*Brooks* largely relied on two rationales. First, it took the view that industrial disability leave equated to leave provided by the Labor Code. It observed that Government Code section 19870, subdivision (a) provides: "'Industrial disability leave' means temporary disability as defined in Divisions 4 . . . and 4.5 . . . of the Labor Code." (*Brooks*, *supra*, 161 Cal.App.4th at p. 1532.) It then stated: "Because [industrial disability leave] is statutorily defined as the equivalent of [temporary disability], then the two-year limitation under section 4656, subdivision (c)(1), necessarily must apply to both [industrial disability leave] and [temporary disability]." (*Brooks*, *supra*, at p. 1532.) Second, it noted that "the two-year limitation does not restrict itself only to [temporary

disability] benefits payable under the Workers' Compensation Act or the Labor Code, as it more broadly applies to '*Aggregate* disability payments for a single injury.'" (*Ibid.*)

Here, the Board applied the first *Brooks* rationale to find that Ayala's base compensation included industrial disability leave. As the Board stated in its decision: "The inclusion of [industrial disability leave] to calculate aggregate disability payments in *Brooks* indicates that applicant's [industrial disability leave] payments must also be considered compensation for purposes of the serious and willful award because [industrial disability leave] is statutorily defined and treated as identical to temporary disability, a benefit provided as part of compensation."

Our case does not implicate the two-year limitation at issue in *Brooks*, so we express no view about its holding. However, to the extent that *Brooks* could be read as support for the proposition that any features of or limitations on temporary disability necessarily must apply to industrial disability leave because of the way industrial disability leave is defined (see *Brooks*, *supra*, 161 Cal.App.4th at p. 1532), we respectfully disagree.

As a logical matter, incorporating a definition from one statutory scheme into a second one does not alone expand the scope of the first statutory scheme. For example, in defining "gross income" for purposes of the state income tax, the Revenue and Taxation Code incorporates the federal definition from the Internal Revenue Code. Entitled "Gross income," section 17071 of the Revenue and Taxation Code provides: "Section 61 of the Internal Revenue Code, relating to gross income defined, shall apply,

9

except as otherwise provided." No one would take this to conclude, however, that the federal definition has now been expanded to include items it did not already include before. From the federal government's point of view, nothing has changed: if something counted as gross income for federal tax purposes before, it still does, and if something was excluded, it still is. That a state has chosen to incorporate a federal definition as part of a state's defined term does not alter the federal definition. Similarly, although our Legislature has the power to amend both the Government Code and the Labor Code, the fact that part of the Government Code incorporates the Labor Code's definition of "temporary disability" does not, by itself, mean that the definition of "compensation" under the Labor Code has expanded in any way. "Compensation" under section 3207 still requires that it be provided by Division 4 of the Labor Code, just as it always has. That is, even though the definition of industrial disability leave incorporates the definition of temporary disability, the "compensation otherwise recoverable" under section 4553 for serious and willful misconduct still does not include industrial disability leave.[6]

---

[6] Notably, although Government Code section 19870, subdivision (a) defines industrial disability leave to "mean[] temporary disability as defined in Divisions 4 (commencing with Section 3201) and 4.5 (commencing with Section 6100) of the Labor Code," nothing in those referenced provisions define "temporary disability." (See Hanna, Cal. Law of Employee Injuries and Workers' Comp., (2023) § 7.01 ["There is no statutory definition of temporary disability, and thus case law, over time, has defined the condition"]; *Brooks*, *supra*, 161 Cal.App.4th at p. 1537 [noting "a lack of statutory definition of temporary disability in the Labor Code"].) Whatever the manner in which the term "temporary disability" is defined in the Labor Code, the Government Code's incorporation of that definition does not itself alter the definition's scope.

To support its rationale, *Brooks* cited a Court of Appeal case and a Board opinion that recognized some level of equivalency between industrial disability leave benefits and temporary disability leave benefits in two different contexts. First, in *State of California v. Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128, 144 (*Ellison*), the court affirmed a Board order awarding a 10 percent unreasonable delay penalty that was calculated based on what the worker would have received in temporary disability, even though the worker received industrial disability leave. (*Id.* at p. 130; see *Brooks*, *supra*, 161 Cal.App.4th at pp. 1532-1533.) However, *Ellison*, like *Brooks*, does not involve the scope of the statutory term "compensation," as the unreasonable delay penalty at issue in *Ellison* required a 10 percent increase in "the full amount of the order, decision or award" when it applied. (See former § 5814, cited in *Ellison*, *supra*, at p. 138.) And although *Ellison*'s rationale partly relied on its view that the definition of industrial disability leave as temporary disability "evidence[d] an intent to grant state workers the benefits of" the temporary disability provisions (*Ellison*, *supra*, at p. 146), we discern no similar intent to expand the scope of a statutory term such as "compensation" where the Legislature does not expressly so provide. We therefore do not view *Ellison* as dispositive here, although we note that its holding—that the Board can award a percentage penalty based on what a worker would have received on temporary disability (instead of what the worker actually received in industrial disability leave)—is broadly consistent with our own. (*Ellison*, *supra*, 44 Cal.App.4th at p. 130.)

Second, in *Salmon v. Workers' Comp. Appeals Bd.* (2007) 72 Cal.Comp.Cases 1042 (writ den.) (*Salmon*), the Board (in *Brooks*' words) "effectively agreed . . . that [industrial disability leave] benefits are the same as [temporary disability] for purposes of applying the two-year limitation set forth in section 4656, subdivision (c)(1)." (*Brooks*, *supra*, 161 Cal.App.4th at p. 1534.) At first glance, this might show that, before *Brooks*, the Board believed that the two programs should be seen as synonymous, at least for purposes of section 4656's time limitations. This is more significant given that the Board's "interpretation of statutes in the area of workers' compensation" must be "accord[ed] '"significant respect,"'" even though our review is de novo. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290.) However, in *Salmon*, the worker and the employer had stipulated that "[t]emporary disability payments commenced 4/26/04" and that the employer "paid benefits at the [industrial disability leave] rate for a total of 365 days [starting] 4/26/04." (*Salmon v. State*, 2006 Cal. Wrk. Comp. P.D. LEXIS 41, *4-5 (Cal. Workers' Comp. App. Bd. September 14, 2006, cited in *Salmon*, *supra*, 72 Cal.Comp.Cases at p. 1043.) *Salmon* thus reflects the parties' stipulations, not the Board's considered interpretation of the relevant statutes. Accordingly, we do not view *Salmon* as persuasive authority here.[7]

---

[7] Although *Brooks* also discussed another Board opinion, that opinion appears to rely on the same definition-based rationale as *Brooks* itself does. (See *Brooks*, *supra*, 161 Cal.App.4th at p. 1537 [noting Board's opinion, which stated that "'the Government Code expressly defines [industrial disability leave] as temporary disability'"].)

All these authorities at most can be used to indicate that because the Government Code defines industrial disability leave as temporary disability, temporary disability (and therefore compensation) must be expanded to include industrial disability leave. Because we do not believe that to be the case, we do not follow those authorities here.

Ayala's other arguments are also unavailing. Ayala contends that the base compensation includes industrial disability leave because the phrase "compensation otherwise recoverable" in section 4553 expands the definition of "compensation" in section 3207. In Ayala's view, had the Legislature truly meant to say that the 50 percent increase applied only to compensation, "there would be no need to include the phrase 'otherwise recoverable.'" We disagree.

The phrase "otherwise recoverable" in section 4553 modifies the subject "compensation" and, like many modifiers, limits its subject's scope. Here, rather than expanding the scope of "compensation," the phrase "otherwise recoverable" restricts "compensation" by excluding the 50 percent increase provided by section 4553 itself, avoiding a potential recursive loop. Generally, "section 3207's definition is to be taken literally: every payment conferred by division 4 is to be considered compensation." (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1982) 130 Cal.App.3d 933, 941.) Without a limitation, this would also include the one-half increase provided by section 4553, because section 4553 falls within Division 4 of the Labor Code. Thus, to forestall any claim that the 50 percent increase itself needs to be increased because it is

13

"compensation," the Legislature specified that the 50 percent increase applies to items that constitute "compensation" *except* those made so by section 4553 itself.

Ayala also argues that our holding violates the mandate that workers' compensation statutes are to be liberally construed to protect injured workers. (§ 3202; see *Smith v. Workers' Comp. Appeals Bd.* (2009) 46 Cal.4th 272, 277.) Certainly, our holding applying the limitation in the statutory definition of "compensation" does not benefit Ayala. However, in other contexts, it would favor the injured worker. For instance, had Ayala's injuries been caused by his own serious and willful misconduct, his industrial disability leave would not have been *reduced* by one half for the very same reason it does not increase by one half here. (See § 4551 [subject to certain exceptions, "[w]here the injury is caused by the serious and willful misconduct of the injured employee, the compensation otherwise recoverable therefor shall be reduced one-half"].) And had *Brooks* taken a view of the relevant statutes that was more consistent with our own, the employee there would have been more likely to prevail and receive an additional year of aggregate disability payments.

Rather than construe the workers' compensation statutes so that it benefits this particular injured worker in this particular circumstance, we remind ourselves that compensation under section 3207 is a "technical" term that affects cases in various contexts. (*Burnelle v. Continental Can Co.* (1987) 193 Cal.App.3d 315, 320; see, e.g., *People v. Hamilton* (2018) 30 Cal.App.5th 673, 683-684 [insufficient evidence supported conviction for false statements for the purpose of obtaining compensation, because the

statements were directed at benefits that did not fall within Division 4 of the Labor Code]; *Duncan v. Wal-Mart Stores, Inc.* (2017) 18 Cal.App.5th 460, 470 [indicating that employer's lien on worker's recovery against tortfeasor is limited to amounts defined as compensation under section 3207].) It is therefore important that we apply the term in the technical way that the Legislature defined it. (See *Ruiz v. Podolsky* (2010) 50 Cal.4th 838, 850, fn. 3 ["'[W]hen the Legislature uses a term of art, a court construing that use must assume that the Legislature was aware of the ramifications of its choice of language'"].) Of course, if the Legislature wants compensation to include industrial disability leave, or otherwise allow workers in Ayala's position to receive additional payments, it can say so.

Lastly, Ayala contends that because the Board found that CDCR engaged in serious and willful misconduct (so was not merely negligent), the "standard" rules no longer apply. He states, for example, that "when an employer has acted in violation of section 4553, the case is no longer within the standard realm where compensation is considered 'without regard to negligence.'" (See §§ 3207 [compensation defined as benefits and payments paid "without regard to negligence"], 3600, subd. (a) [employer is liable for workers' compensation benefits "without regard to negligence"].) In a similar vein, he contends that "an award of increased benefits pursuant to [section] 4553 is tantamount to an award of benefits above the standard 'grand bargain' wherein injuries are contemplated without regard to negligence." Again, we disagree.

It is true that section 4553 will not apply in "standard" or everyday cases. (See *Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1622 [section 4553 requires "an exceptionally high degree of employer fault"].) But it does not follow that when section 4553 applies, the definition of "compensation" changes. The statutes provide no different definition of "compensation" in cases involving serious and willful employer misconduct. Instead, where section 4553 applies, a worker is entitled to "compensation" as otherwise, but just more of it. Moreover, if this were a case in which the "bargain" between worker and employer has been broken, then Ayala's recourse would not lie with extra compensation under section 4553, but with a civil suit for damages. (See *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 714 ["there are certain types of intentional employer conduct which bring the employer beyond the boundaries of the compensation bargain, for which a civil action may be brought"]; *id.* at pp. 713-714 [section 4553 falls between "compensat[ion] at the normal rate" and a civil action].) In sum, even though section 4553 will apply only in unusual cases, figuring out the additional compensation in those cases calls for simply a straightforward application of the statute's terms.

DISPOSITION

The decision of the Board is annulled, and the matter is remanded to the Board for further proceedings consistent with this opinion.  Each side to bear its own costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL       
             J.

We concur:

RAMIREZ      
      P. J.

CODRINGTON   
      J.