# IN THE SUPREME COURT OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND
REHABILITATION,
Petitioner,
v.
WORKERS' COMPENSATION APPEALS BOARD and
MICHAEL AYALA,
Respondents.

S282013

Fourth Appellate District, Division Two
E079076

Workers' Compensation Appeals Board
ADJ1360597

February 20, 2025

Justice Kruger authored the opinion of the Court, in which
Chief Justice Guerrero and Justices Corrigan, Liu, Groban,
Jenkins, and Evans concurred.

DEPARTMENT OF CORRECTIONS AND REHABILITATION
v. WORKERS' COMPENSATION APPEALS BOARD

S282013

Opinion of the Court by Kruger, J.

California's workers' compensation law guarantees a certain level of recovery for employees who are injured on the job, regardless of whether the employer was at fault. (Lab. Code, § 3200 et seq.; *Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16.) If, however, the employee was injured because of the employer's serious and willful misconduct, the employee is entitled to a 50 percent increase in the "amount of compensation otherwise recoverable." (Lab. Code, § 4553.) The term " '[c]ompensation' " is defined specifically to mean "compensation under" the workers' compensation law. (*Id.*, § 3207.)

The question in this case is whether, for purposes of calculating the 50 percent premium under Labor Code section 4553, "compensation otherwise recoverable" includes industrial disability leave payments, a benefit that the Government Code makes available to certain public employees in lieu of workers' compensation disability payments. The Workers' Compensation Appeals Board answered yes to this question. The Court of Appeal, however, disagreed, explaining that the board's conclusion is plainly inconsistent with the statutory definition of " 'compensation' " as limited to "compensation under" the workers' compensation law. (Lab. Code, § 3207.) We agree with the Court of Appeal and affirm its judgment.

1

## I.

Michael Ayala was working as a correctional officer for California's Department of Corrections and Rehabilitation (CDCR) when he suffered significant injuries in a planned attack by prison inmates. He filed a workers' compensation claim in which he asserted that his injuries were caused by CDCR's serious and willful misconduct in failing to take appropriate safety measures to respond to a credible and specific threat of inmate violence. Although a workers' compensation administrative law judge (WCJ) initially rejected the argument, the Workers' Compensation Appeals Board (Board) agreed with Ayala that CDCR had engaged in serious and willful misconduct, and thus concluded that Ayala was entitled to a 50 percent increase in compensation under Labor Code section 4553 (section 4553). (See *Department of Corrections & Rehabilitation v. Workers' Comp. Appeals Bd.* (2023) 94 Cal.App.5th 464, 468–469 (*Ayala*).)

CDCR did not challenge the Board's finding of serious and willful misconduct, but it disagreed with Ayala about the amount to which he was entitled as a result. Under the terms of the Workers' Compensation Act, which is codified as division 4 of the Labor Code, employees recovering from injury are entitled to collect temporary disability (TD) benefits, which are capped at two-thirds of the employee's average weekly earnings, subject to statutory limits. (Lab. Code, § 4653; see *id.*, § 4453 [setting out instructions for calculating average weekly earnings]; *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 ["In general, temporary disability indemnity is payable during the injured worker's healing period from the injury . . . ."].) But instead of collecting TD benefits,

Ayala received industrial disability leave (IDL) and enhanced industrial disability leave (EIDL) benefits, which are more generous disability benefits made available to certain public employees under the Government Code. (Gov. Code, §§ 3527, subd. (b), 19869, 19871, subd. (a), 19871.2; Cal. Code Regs., tit. 2, § 599.769.) Under the relevant provisions of the Government Code, Ayala received his full salary (minus certain withholdings), rather than the more limited amount he would have received as TD payments under the workers' compensation law.

CDCR argued that the 50 percent increased compensation under section 4553 should be calculated based not on the larger IDL and EIDL benefits that Ayala received as an eligible public employee under the Government Code, but instead on the smaller TD benefits he was otherwise eligible to collect under the workers' compensation law. The WCJ agreed. The judge reasoned that the 50 percent increase could apply only to the TD benefits because the workers' compensation law does not provide for IDL or EIDL benefits, and the Board accordingly lacks jurisdiction to award them. (Cal. Code Regs., tit. 2, § 599.768.)

On Ayala's motion for reconsideration, the Board reversed. The Board agreed that it lacked jurisdiction to award IDL and EIDL benefits, but considered this beside the point, because the Board "unquestionably has jurisdiction to issue and calculate [the] applicant's serious and willful award that he is entitled to under section 4553." The Board concluded that for purposes of calculating the award, the "compensation otherwise recoverable" included IDL and EIDL benefits. The Board relied for its conclusion primarily on a Government Code provision

3

defining industrial disability leave as "temporary disability as defined in Divisions 4 (commencing with Section 3201) and 4.5 (commencing with Section 6100) of the Labor Code." (Gov. Code, § 19870, subd. (a).) The Board explained that in *Brooks v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1522 (*Brooks*), the Court of Appeal had relied on the same definitional provision to conclude that the workers' compensation system's two-year limit on payments for temporary disability applied to IDL as well as TD. (*Id.* at p. 1532; see Lab. Code, § 4656, subd. (c)(1) ["Aggregate disability payments for a single injury . . . causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment."].) The Board reasoned that "[t]he inclusion of IDL to calculate aggregate disability payments in *Brooks* indicates that [the] applicant's IDL payments must also be considered compensation for purposes of the serious and willful award because IDL is statutorily defined and treated as identical to temporary disability, a benefit provided as part of compensation."

The Court of Appeal granted CDCR's petition for review and reversed the decision of the Workers' Compensation Appeals Board as inconsistent with the plain meaning of the statute. (*Ayala, supra,* 94 Cal.App.5th at p. 469.) The court explained that the Workers' Compensation Act defines the term " '[c]ompensation' " specifically to mean "compensation *under this division* [i.e., the workers' compensation law, division 4 of the Labor Code] and includes every benefit or payment *conferred by this division* upon an injured employee." (Lab. Code, § 3207, italics added.) The court reasoned that while TD benefits are

compensation provided "under" the workers' compensation law, IDL and EIDL benefits are not; they are instead benefits provided under the Government Code. "Accordingly, the 'amount of compensation otherwise recoverable' under section 4553 does not include industrial disability leave." (*Ayala*, at p. 472.)

The Court of Appeal acknowledged the Board's reliance on *Brooks*, noting that "although *Brooks* construed a different statute, its reasoning could support a conclusion that base compensation includes industrial disability leave." (*Ayala*, *supra*, 94 Cal.App.5th at p. 472.) The court expressed no view on the issue presented in *Brooks*, concerning the application of the two-year limitation period prescribed by Labor Code section 4656, subdivision (c)(1). But the court rejected any suggestion that TD and IDL are for all relevant purposes equivalent: "[T]o the extent that *Brooks* could be read as support for the proposition that any features of or limitations on temporary disability necessarily must apply to industrial disability leave because of the way industrial disability leave is defined [citation], we respectfully disagree." (*Ayala*, at p. 473.)

The Court of Appeal also discussed and distinguished a second appellate decision cited and discussed in *Brooks*. In *State of California v. Workers' Comp. Appeals Bd.* (1996) 44 Cal.App.4th 128 (*Ellison*), the Court of Appeal affirmed a Board order awarding a statutory penalty under the workers' compensation law for unreasonable delay in payment of disability benefits, even though the claimant in that case was entitled to receive IDL payments rather than TD payments. (*Ellison*, at p. 130.) The court in this case saw *Ellison* as off-point because nothing in the opinion purported to "expand the

scope" of the term " 'compensation.' " (*Ayala, supra*, 94 Cal.App.5th at p. 474.) The court also noted that the Board in *Ellison* had determined that the penalty at issue should be calculated based on what the employee would have received in TD benefits, rather than what she was due in IDL payments. (*Ibid.*) In this respect, the Board's approach in *Ellison* was consistent with the Court of Appeal's determination about the proper calculation of the 50 percent premium prescribed by section 4553.

Ayala petitioned for review, supported by the Board as amicus curiae. We granted the petition.

## II.

The question in this case requires us to consider the interplay between two statutory schemes governing disability benefits for certain workers who are injured on the job. The first of these schemes is the law governing workers' compensation. First enacted in 1913, the Workers' Compensation Act is now codified as division 4 of the Labor Code. The act sets out "a comprehensive statutory scheme through which employees may receive prompt compensation for costs related to injuries incurred in the course and scope of their employment." (*Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1005; see Lab. Code, §§ 3200–6002; Stats. 1913, ch. 176, §§ 1– 92, pp. 279–320; Stats. 1937, ch. 90, pp. 265–306.) "The system is premised on a theoretical exchange we have called the ' "compensation bargain." ' [Citation.] Under this bargain, 'the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the

6

effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort.' " (*Kuciemba*, at p. 1006.)

The workers' compensation law contains detailed provisions governing the calculation of benefits for workplace injury. As pertinent here, employees unable to work while recovering from an injury are generally entitled to collect TD payments, in an amount capped at up to two-thirds of the employee's average weekly earnings. (Lab. Code, § 4653; see *id.*, § 4453 [setting out instructions for calculating average weekly earnings].) The law has set a two-year limit on aggregate disability payments for a single injury causing temporary disability. (*Id.*, § 4656, subd. (c)(1); see generally *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1291–1292 (*Lauher*).)

The second statutory scheme at issue in this case is the statute creating IDL. Enacted in 1974 as part of the Berryhill Total Compensation Act, the IDL statute applies to covered state employees who are "temporarily disabled by illness or injury arising out of and in the course of state employment." (Gov. Code, § 19871, subd. (a); Stats. 1974, ch. 374, § 2.5, p. 735.) The statute defines the term " '[i]ndustrial disability leave' " by reference to the workers' compensation law: " 'Industrial disability leave' means temporary disability as defined in Divisions 4 (commencing with Section 3201) and 4.5 (commencing with Section 6100) of the Labor Code . . . ." (Gov. Code, § 19870, subd. (a).) IDL benefits are provided in lieu of workers' compensation disability payments; an employee may not "receive temporary disability indemnity . . . for any period

for which he or she receives industrial disability leave." (*Id.*, § 19872, subd. (a).)

IDL benefits are, in general, more generous than the TD benefits provided for under the workers' compensation law. A temporarily injured employee who qualifies for IDL is entitled to receive leave and his or her full pay, minus taxes and certain deductions or contributions, for up to 22 days. (Gov. Code, § 19871, subd. (a).) The employee then receives "two-thirds of his or her regular salary throughout the remainder of 52 weeks, during which time the employee may also supplement IDL payments with accrued leave time in an amount approximating the employee's full net pay." (*Brooks*, *supra*, 161 Cal.App.4th at p. 1529, citing Gov. Code, §§ 19871, subd. (a), 19872, subd. (b).) Because IDL benefits provide employees their net take home pay, it ordinarily results in payments that are greater than or equal to the payments available under the provisions of the workers' compensation law governing TD. (See *Brooks*, at pp. 1528–1530.) In addition, many state employees, like Ayala, may receive EIDL, under which IDL benefits may be extended for a total period of one year. (Gov. Code, § 19871, subd. (a); *id.*, § 19871.2.)[1] An employee who remains temporarily disabled

_____

[1] EIDL was originally, and primarily remains, a negotiated benefit established through collective bargaining, though certain "excluded" public employees are statutorily entitled to receive EIDL. (See Gov. Code, § 19871, subd. (b) ["If the provisions of this section are in conflict with the provisions of a memorandum of understanding reached pursuant to [Labor Code] Section 3517.5, the memorandum of understanding shall be controlling without further legislative action, except [in

after IDL and EIDL payments terminate is then entitled to receive payments for temporary disability under the workers' compensation law. (Gov. Code, § 19874, subd. (a).)

## III.

## A.

The question before us is one of statutory interpretation, which we review de novo. (*Lauher*, *supra*, 30 Cal.4th at p. 1290.) We employ familiar principles in this enterprise. We begin with the text, considering the ordinary meaning of the statutory language as well as the text of related provisions, terms used elsewhere in the statute, and the structure of the statutory scheme. (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157 (*Larkin*).) If the text is clear, we must give effect to it. If, however, the text is ambiguous, we may consult extrinsic sources, including the legislative history. (*Id.* at p. 158.) In ascertaining the statutory meaning, we accord appropriate weight to the interpretations adopted by the Workers' Compensation Appeals Board in the course of official

---

circumstances not applicable here]."]; *id.*, §§ 19871.2 [EIDL benefits for "an excluded employee"], 3527, subd. (b) [defining " '[e]xcluded employee' "]; Cal. Code Regs., tit. 2, § 599.769 [EIDL for excluded employees who supervise represented employees eligible for EIDL]; see also Stats. 1977, ch. 1159, p. 3752; Gov. Code, § 3524, as amended by Stats. 1986, ch. 103, § 1, p. 237; Dept. of Human Resources, Human Resources Manual, § 1412 (Industrial Disability Leave) <https:// hrmanual.calhr.ca.gov/Home/ManualItem/1/1412> [as of Feb. 20, 2025] ["EIDL was established in 1984 through memoranda of understanding between the state and exclusive representatives for rank-and-file employees in specific bargaining units."].) All Internet citations in this opinion are archived by year, docket number, and case name at <https:// courts.ca.gov/opinions/cited-supreme-court-opinions>.

proceedings. (*Ibid.*, citing *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13.) But if "the agency's interpretation is clearly erroneous or unauthorized under the statute, we will not give effect to its understanding of the statute." (*Larkin*, at p. 158.)

The workers' compensation law instructs that "[l]iability for the compensation provided by this division [i.e., the workers' compensation law] . . . shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ." (Lab. Code, § 3600, subd. (a).) But the law contains special recovery rules in cases involving " '[s]erious and willful misconduct,' " which represents "an exceptionally high degree" of fault. (*Ferguson v. Workers' Comp. Appeals Bd.* (1995) 33 Cal.App.4th 1613, 1622 (*Ferguson*) [serious and willful misconduct consists of "an act deliberately done for the express purpose of injuring another, or intentionally performed whether with knowledge that serious injury is a probable result or with a positive, active, wanton, reckless and absolute disregard of its possibly damaging consequences"].) If the injury is caused by the serious and willful misconduct of the employee, then, with some exceptions, the "compensation otherwise recoverable" for the injury must be reduced by one-half. (Lab. Code, § 4551.) If, however, the injury is caused by the serious and willful conduct of the employer, then the "amount of compensation otherwise recoverable" must be increased by one-half. (§ 4553.) This case concerns the latter provision.

Section 4553 does not specify what constitutes the "compensation otherwise recoverable" that is subject to the 50 percent premium for serious and willful employer misconduct.

But a definition applicable throughout the workers' compensation law provides that " '[c]ompensation' means compensation under this division and includes every benefit or payment conferred by this division upon an injured employee . . . without regard to negligence." (Lab. Code, § 3207 (section 3207); see also *Ferguson, supra,* 33 Cal.App.4th at p. 1619 ["Section 4553 cannot be read without reference to section 3207, which defines 'compensation.' "].) The WCJ in this case had held, and CDCR now argues, that under sections 4553 and 3207, the "compensation otherwise recoverable" to Ayala is limited to the TD indemnity to which he is entitled under the workers' compensation law. Ayala and the Board, by contrast, take the view that the "compensation otherwise recoverable" to Ayala includes the IDL[2] payments Ayala received under Government Code section 19871. Given the plain text of the statute, CDCR has the better of the argument.

Section 3207 defines " '[c]ompensation' " broadly in some respects, to "include[] every benefit or payment conferred by" the workers' compensation law. But this definition includes an essential limitation: that compensation includes only those benefits and payments "under" the workers' compensation law. As the WCJ held and CDCR agrees, this means that Ayala is entitled to a serious misconduct premium calculated as one-half of the category of benefits and payments to which he is entitled under the workers' compensation law, including, most significantly, TD payments (Lab. Code, §§ 4653–4654) as well as

---

[2] For simplicity, we use the term "IDL" as a shorthand for both industrial disability leave and enhanced industrial disability leave. The distinctions between IDL and EIDL do not affect the analysis.

reimbursement of medical and legal costs stemming from the injury. (*Adams v. Workers' Comp. Appeals Bd.* (1976) 18 Cal.3d 226, 231 [holding that medical-legal costs are " 'compensation' " under § 3207 because they are "contained in division 4 of the Labor Code," and citing Lab. Code, §§ 4600 and 5811, subd. (b)(2)]; *Ayala, supra,* 94 Cal.App.5th at p. 469 ["Assuming that Ayala would have been entitled to temporary total disability, the base compensation would have been two-thirds of his salary, subject to statutory limits."].) Although Ayala may be receiving other amounts in the form of IDL payments, TD payments and other benefits provided by division 4 represent the compensation that is "recoverable" to him "under" the workers' compensation law. (§§ 4553, 3207.) But Ayala is not entitled to calculate the 50 percent premium based on the greater amount of IDL benefits because IDL benefits are not compensation "under" the workers' compensation law; they are, instead, benefits created and conferred under the Government Code.

This straightforward reading of the statutory language accords with our prior decisions concerning the meaning of the term "compensation" as used in the workers' compensation law. In *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, we considered whether the general exclusive remedy provisions of the workers' compensation law meant that Labor Code section 132a, which provides remedies for prohibited discrimination against injured workers, supplies the exclusive remedy for employment discrimination based on a disability arising from an industrial injury. We answered no, explaining that the general exclusive remedy provisions apply only to "[l]iability for the compensation provided by this division" (Lab. Code, § 3600, subd. (a)) and that the term " ' "[c]ompensation" ' " was further

12

defined in section 3207 as " 'compensation under Division 4,' " while the Labor Code section 132a remedy appeared in division 1.  (*City of Moorpark*, at p. 1154.)  Three years later, we would explain that the "same reasoning dictates the conclusion that section 132a backpay is not subject to any limitation on interest implicit in [Labor Code] section 5800," a provision governing " 'awards of the appeals board . . . for the payment of compensation.' " (*Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1113.)  We explained that an award of backpay under section 132a is not " 'compensation' within the meaning of section 5800, because that term, according to section 3207, 'means compensation under Division 4.' " (*Currie*, at p. 1113.)  Section 132a's authorization of a backpay remedy, we continued, "appears in division 1 of the Labor Code and is separate and distinct from the compensation for industrial injuries provided for in division 4."  (*Currie*, at p. 1113.)  Similarly here:  The authorization of IDL benefits does not appear in division 4 of the Labor Code, and so IDL payments fall outside the scope of the "compensation" to which section 4553 refers.

### B.

Ayala agrees that "IDL is not 'conferred by' Division 4, so it does not meet the strict definition of 'compensation' under section 3207."  Still, he raises several arguments for treating IDL benefits as though they were nonetheless "compensation" under the workers' compensation law.  The arguments are not persuasive.

### 1.

Ayala's primary argument, which echoes the Board's primary line of reasoning in this case, does not concern the

meaning of either section 4553 or section 3207. It instead focuses on a definitional provision in the statute creating IDL.

The definitional provision, Government Code section 19870, subdivision (a), states: "As used in this article: [¶] . . . 'Industrial disability leave' means temporary disability as defined in Divisions 4 . . . and 4.5 . . . of the Labor Code and includes any period in which the disability is permanent and stationary and the disabled employee is undergoing vocational rehabilitation." To the extent the provision refers to "temporary disability as defined in" the workers' compensation law (*ibid.*), it may be somewhat misleading, as no statutory definition appears in the workers' compensation law; the meaning of the term has instead been elaborated through case law. (See *Ayala*, *supra*, 94 Cal.App.5th at p. 473, fn. 6; *Brooks*, *supra*, 161 Cal.App.4th at p. 1537.) In all events, Ayala argues that because the Government Code defines IDL as "mean[ing] temporary disability" as the term is used in the workers' compensation law, IDL "is to be treated as TD" and thus must count as "compensation under" the workers' compensation law to the same extent as TD.

The argument places substantially more weight on the definition in Government Code section 19870, subdivision (a) than it can bear. For one thing, the definition does not actually define " '[i]ndustrial disability leave' " (*ibid.*) to mean TD *benefits*, as Ayala appears to assume. While the terms " '[i]ndustrial disability leave' " and "temporary disability" are frequently used as shorthand for the payments and benefits that accompany injury-caused temporary disability, it does not appear this is how Government Code section 19870, subdivision (a) uses the terms. The specification that " '[i]ndustrial

14

disability leave' " includes any "period" of vocational rehabilitation suggests a focus on *when* the industrial disability leave provisions apply — i.e., during any "period" of temporary disability, as that term has been elaborated in the workers' compensation context — as opposed to *what* benefits are conferred.

In any event, Ayala's Government Code section 19870, subdivision (a) argument suffers from a more fundamental problem, which was well described in the opinion of the Court of Appeal: "As a logical matter, incorporating a definition from one statutory scheme into a second one does not alone expand the scope of the first statutory scheme. . . . [A]lthough our Legislature has the power to amend both the Government Code and the Labor Code, the fact that part of the Government Code incorporates the Labor Code's definition of 'temporary disability' does not, by itself, mean that the definition of 'compensation' under the Labor Code has expanded in any way. 'Compensation' under section 3207 still requires that it be provided by division 4 of the Labor Code, just as it always has." (*Ayala, supra*, 94 Cal.App.5th at p. 473.) As Ayala acknowledges, IDL is not provided for in division 4, and thus is not "compensation" within the meaning of section 3207. Nothing about the definition of IDL in Government Code section 19870, subdivision (a) alters that inescapable fact.

Ayala's argument to the contrary relies heavily on *Brooks*, *supra*, 161 Cal.App.4th 1522. This reliance is misplaced. *Brooks* concerned a different question: whether IDL payments count as "temporary disability payment[s]" that start the running of the two-year limit on "[a]ggregate disability payments" in Labor Code section 4656, subdivision (c)(1). The

court answered yes.  The *Brooks* court based its holding on the plain language of the relevant statutes, including Government Code section 19870, subdivision (a).  It reasoned:  "Because IDL is statutorily defined as the equivalent of TD, then the two-year limitation under section 4656, subdivision (c)(1), necessarily must apply to both IDL and TD.  Furthermore, the two-year limitation does not restrict itself only to TD benefits payable under the Workers' Compensation Act or the Labor Code, as it more broadly applies to '*Aggregate* disability payments for a single injury.'  ([Lab. Code,] § 4656, subd. (c)(1), italics added.)"  (*Brooks*, at p. 1532.)

   *Brooks* did not address the question whether IDL payments count as "compensation" within the meaning of the workers' compensation law, and its reasoning does not dictate a particular answer to that question.  On the contrary:  In reaching its conclusion, the *Brooks* court emphasized that the two-year limit on aggregate disability payments "does not restrict itself only to TD benefits payable under the Workers' Compensation Act or the Labor Code."  (*Brooks, supra*, 161 Cal.App.4th at p. 1532.)  The definition of " '[c]ompensation' " in section 3207, by contrast, *does* restrict itself to amounts payable under the workers' compensation law.  We are obligated to give effect to the plain meaning of this restriction.  *Brooks* does not suggest otherwise.

   Ayala relies primarily on language in the *Brooks* opinion that speaks generally of a definitional "equivalen[ce]" between IDL and TD.  (*Brooks, supra*, 161 Cal.App.4th at p. 1532.)  But that language must be understood in context.  The result in *Brooks* did not depend on any broad conclusion that IDL is for all legal purposes equivalent to TD.  To answer the question

before it, *Brooks* needed to establish only that IDL benefits, like TD benefits, are payments made to compensate an injured employee during a period of temporary disability, such that the period during which an employee receives IDL benefits ought to count toward the two-year limit on *aggregate* disability payments. (See, e.g., *id.* at p. 1533 [describing IDL as "*a form* of temporary disability" and noting that "temporary disability indemnity" can be paid at either the IDL rate or the TD rate (italics added)].) The argument Ayala raises here depends on a much more far-reaching view of the ways in which IDL is assertedly "equivalent" to TD — one that runs up against the plain meaning of the definition of " '[c]ompensation' " in section 3207. *Brooks* did not adopt such a view; indeed, it had no reason to consider it.[3] Nor, by the same token, do we cast any doubt on the holding of *Brooks* by giving effect to the plain meaning of section 3207 in this case.

Ayala also relies on *Ellison*, *supra*, 44 Cal.App.4th 128. Unlike *Brooks*, *Ellison* did consider the meaning of a provision of the workers' compensation law that referred to the provision of "compensation," as applied to a worker entitled to receive IDL. But *Ellison* is no more helpful to Ayala than *Brooks*.

The question presented in *Ellison* was whether, when an employer unreasonably delays "compensation" to an injured worker, the Board has the authority to impose a 10 percent penalty on the award of benefits (see Lab. Code, former § 5814),

---

[3] To the extent some of the language in *Brooks* has been understood out of context to mean that IDL is for all purposes equivalent to, and effectively interchangeable with TD, we now clarify that this conclusion is incorrect and *Brooks* should no longer be cited for it.

even when the claimant is a public employee entitled to receive IDL benefits in lieu of TD benefits.  The Board had answered this question in the affirmative, but it concluded that the penalty should be calculated based only on the amount of TD indemnity the employee would otherwise have been entitled to receive.  The Board disclaimed any authority to impose penalties based on nonpayment of IDL benefits to which the employee was entitled under the Government Code.  (*Ellison*, *supra*, 44 Cal.App.4th at p. 142 [" '[*P*]*enalty was not imposed for unreasonable delay in paying IDL benefits, but for* [*the State's*] *continuing failure to pay* [*Ellison*] any benefits for her temporary disability, despite its legal obligation to do so.  Therefore . . . the Board properly acted within its jurisdiction by imposing a 10% penalty under Labor Code section 5814 against *the amount of temporary disability indemnity* [original italics] that would have been payable in this case, for [the State's] unreasonable failure to timely provide [Ellison] *any* benefits for her undisputed period of temporary disability.' "]; accord, *id.* at p. 145.)

The Court of Appeal in *Ellison* upheld the Board's decision on appeal.  It concluded that the Board had acted within its statutory authority in imposing the penalty, alluding to, among other things, "the Legislature's definition of IDL as identical with temporary disability indemnity (TD) under the Labor Code (Gov. Code, § 19870, subd. (a))."  (*Ellison*, *supra*, 44 Cal.App.4th at p. 130, fn. omitted.)

Ayala seeks to marshal this language in support of the proposition that the definition of IDL in Government Code section 19870, subdivision (a) means that IDL payments, like TD payments, are "compensation" under the workers'

compensation law. But this is not what the opinion says. The *Ellison* court cited Government Code section 19870, subdivision (a), as an indication of the Legislature's "intent to grant state workers the benefits of" the statutory penalty for late payment in cases of temporary disability (*Ellison, supra,* 44 Cal.App.4th at p. 146); it did not reach any broader conclusions about the extent to which the full amount of an IDL payment must be treated as "compensation" under the workers' compensation law, on which a section 4553 premium might be based. And notably, in the decision on review, the Board had expressly declined to rely on the proposition Ayala advances here, stating clearly that " 'discussion . . . as to whether IDL benefits are "compensation" under Division 4 of the Labor Code, and therefore subject to penalty under Labor Code section 5814, [was] not germane' " to its decision. (*Ellison*, at pp. 141–142.) Again, the Board's view — which the Court of Appeal upheld — was that it had authority to impose the penalty only to the extent that the employer's nonpayment of benefits deprived the employee of the TD indemnity to which she would otherwise have been entitled under the workers' compensation law; the Board eschewed any authority to impose penalties based on nonpayment of the IDL benefits to which the employee was entitled under the Government Code. (*Id.* at pp. 142, 145.)

*Ellison,* in other words, lends no support to Ayala's argument that "compensation" includes the full amount he is entitled to receive in IDL benefits under the Government Code. *Ellison* instead simply recognizes that, when an employer fails to make *any* timely payment to an injured public employee, the employer is subject to a penalty for that failure, regardless of whether the public employee was entitled to receive TD benefits

or a larger amount in IDL benefits. And to the extent *Ellison* touches on the kind of calculation issues we confront in this case, *Ellison* is even less helpful to Ayala. While the Board in *Ellison* had taken the view that a public employee is entitled to a penalty for failure to timely pay "compensation," it also concluded that the amount of that penalty must be calculated solely on the basis of the amount the employee would have received in TD payments under the workers' compensation law; it may not be calculated based on what a public employee "actually received in industrial disability leave" under Government Code section 19871. (*Ayala, supra*, 94 Cal.App.5th at p. 474.) That is, in essence, the very argument CDCR makes about the calculation of the 50 percent premium for serious and willful misconduct under section 4553. Thus, as the Court of Appeal in this case rightly noted, the Board's decision and the *Ellison* court's affirmance are "broadly consistent" with CDCR's position in this case. (*Ayala*, at p. 474.) *Ellison* offers no genuine assistance to Ayala's argument based on the definition of IDL in Government Code section 19870, subdivision (a).

**2.**

Venturing beyond the definition in Government Code section 19870, subdivision (a), Ayala argues that various provisions of the Labor Code confirm that IDL is, for all intents and purposes, indistinguishable from TD. He cites two Labor Code provisions, in particular, in support of his argument that IDL is "compensation." Neither provision supports the argument — in fact, both provisions use terms other than "compensation" to refer to benefits provided for outside of the workers' compensation law.

20

Ayala focuses in particular on Labor Code section 4650 (section 4650), which governs the timely payment of indemnity for both temporary and permanent disability. Subdivision (d) of the provision imposes a 10 percent penalty on untimely indemnity payments "unless the employer continues the employee's wages under a salary continuation plan, as defined in subdivision (g)." (§ 4650, subd. (d).) Subdivision (g), in turn, defines a salary continuation plan as "a plan that meets both of the following requirements: [¶] (1) The plan is paid for by the employer pursuant to statute, collective bargaining agreement, memorandum of understanding, or established employer policy. [¶] (2) The plan provides the employee on his or her regular payday with salary not less than the employee is entitled to receive pursuant to statute, collective bargaining agreement, memorandum of understanding, or established employer policy and not less than the employee would otherwise receive in indemnity payments." (*Id.*, subd. (g).) It is undisputed that IDL benefits qualify as a " 'salary continuation plan' " within the meaning of this provision. Because the payment of IDL benefits will excuse an employer's failure to pay TD benefits in a timely manner, Ayala argues that IDL payments are a benefit "under" the workers' compensation law itself.

Although Ayala's argument focuses mainly on IDL, the argument he makes based on section 4650, subdivision (g) is not so limited: It would apply equally to every kind of salary continuation plan that will excuse the nonpayment of TD benefits, including plans adopted "pursuant to" collective bargaining agreements and employer policy. In this respect, Ayala goes well beyond the Board whose decision is on review. The Board's decision does not depend on the notion that every

kind of salary continuation plan — from whatever legal source it may derive — constitutes compensation under the workers' compensation law, and for good reason: To accept the argument would be to upend the established distinction between "[p]ayment of workmen's compensation liability, as required by the state act, and payment of compensation benefits over and beyond the liability imposed by the state." (*City etc. of San Francisco v. Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 1001, 1010.) Section 4650, subdivision (g) is not plausibly understood to mean that payment over and beyond the amount prescribed by the Workers' Compensation Act is nonetheless compensation "under" the act.

Ayala also invokes Labor Code section 4909, a provision of the Workers' Compensation Act that prevents double recovery by allowing calculations of "the amount of the compensation to be paid" to take into account "[a]ny payment, allowance, or benefit received by the injured employee during the period of his incapacity . . . which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation." Ayala argues that if the payment of IDL benefits can reduce an award otherwise owed under the workers' compensation law, it must therefore qualify as compensation "under" the workers' compensation law itself. Assuming for the sake of argument that section 4909 is relevant here (see *Sea-Land Service, Inc. v. Workers' Comp. Appeals Bd.* (1996) 14 Cal.4th 76, 86), Ayala's reading of that provision is faulty. Section 4909 by its terms distinguishes between payments "which by the terms of this division [i.e., the workers' compensation law] [were] not . . . due and payable" at the time they were received (i.e., voluntary payments or other payments

22

conferred outside the workers' compensation law) and "compensation to be paid." And a voluntary wage payment, or any other payment otherwise provided for outside of the workers' compensation law, is not a payment "under" the workers' compensation law merely because the law prevents double recovery for the same injury.

**3.**

Ayala briefly advances two remaining textual arguments, which we need only briefly address. Ayala first argues that even if payments credited against TD benefits are not "compensation under" the workers' compensation law (§ 3207), they are "compensation *otherwise* recoverable" for purposes of section 4553 (italics added). Ayala fails to explain, however, why including the word "otherwise" would justify ignoring clear limitations on what counts as "compensation" in the workers' compensation law. Presumably the Legislature included the term "otherwise" in section 4553 to make clear that the 50 percent premium applies to "compensation recoverable" under *other* sections of the workers' compensation law — i.e., "compensation" other than that recoverable under section 4553 itself. In any event, nothing about the phrase "compensation otherwise recoverable" suggests that the Legislature meant for the section 4553 premium to apply to amounts that are not "compensation" within the meaning of the statute.

Ayala also argues that section 3207's reference to " '[c]ompensation' . . . without regard to negligence" means that the standard definition may be "set aside for the more specific provisions found within section 4553" that govern cases of serious and willful employer misconduct. But there are no "more specific provisions" within section 4553 governing what

"compensation" means. Section 4553 simply states that "compensation otherwise recoverable" — that is, the compensation that would be owed "without regard to negligence" — must be increased by one-half in cases of serious and willful employer misconduct. This is a straightforward instruction for cases involving serious and willful employer misconduct, and it creates no evident conflict with any other provision of the law.

**4.**

Ayala worries that if IDL benefits are not treated as "compensation" under division 4 of the Labor Code, then the result will be to render section 4553 useless as it applies to public employees. This argument assumes that if IDL payments are not treated as "compensation" to which the one-half premium applies, then a public employee who receives IDL benefits will not be entitled to any additional recovery at all in the event of injury caused by an employer's serious and willful misconduct. But the assumption is wrong: As noted above, it is undisputed in this case that the "compensation otherwise recoverable" on which the one-half premium is to be calculated includes the "compensation" to which Ayala is entitled "under" the workers' compensation law, including TD benefits. This is the order entered by the WCJ in this case, and it is consistent with the statutory direction to calculate the 50 percent premium based on "compensation otherwise recoverable" to Ayala under the workers' compensation law. (§ 4553.) The central function of the section 4553 premium is thus preserved; the conclusion we reach today simply means that the premium Ayala receives is to be calculated in the same manner as the premium to which

other employees are entitled under the workers' compensation law.  He will receive no more, but also no less.

Ayala and the Board argue that Labor Code section 3202, which sets forth a principle favoring interpretations that benefit injured workers, counsels in favor of a rule that would increase compensation for workers injured because of serious and willful employer misconduct.  But as we have long made clear, the general interpretive principle in section 3202 will not "justify an otherwise erroneous construction." (*Larkin*, *supra*, 62 Cal.4th at p. 167; see *Nickelsberg v. Workers' Comp. Appeals Bd.* (1991) 54 Cal.3d 288, 298 ["[T]he rule of liberal construction stated in section 3202 should not be used to defeat the overall statutory framework and fundamental rules of statutory construction."].)

It is, moreover, worth remembering that the interpretive question we address here has implications that extend beyond the context of section 4553 premiums for serious and willful employer misconduct.  "Certainly, our holding applying the limitation in the statutory definition of 'compensation' does not benefit Ayala.  However, in other contexts, it would favor the injured worker.  For instance, had Ayala's injuries been caused by his own serious and willful misconduct, his industrial disability leave [benefit] would not have been *reduced* by one-half for the very same reason it does not increase by one-half here." (*Ayala*, *supra*, 94 Cal.App.5th at pp. 475–476, citing Lab. Code, § 4551 [calling for a one-half reduction in "compensation otherwise recoverable" for an employee injured by his or her own serious and willful misconduct].)  Thus, "[r]ather than construe the workers' compensation statute[] so that it benefits this particular injured worker in this particular circumstance, we remind ourselves that compensation under section 3207 is a

'technical' term that affects cases in various contexts," and thus construe the term "in the technical way that the Legislature defined it." (*Ayala*, at p. 476.) "Of course, if the Legislature wants compensation to include industrial disability leave, or otherwise allow workers in Ayala's position to receive additional payments, it can say so." (*Ibid.*)

Finally, we are mindful of our obligation to give appropriate deference to the Board's reasoned interpretations of the statute it administers. We have accordingly given careful consideration to the Board's position that the section 4553 award should be calculated based on the IDL payments Ayala received. But we cannot give effect to that position because it is contrary to the plain language of the statute. (*Larkin*, *supra*, 62 Cal.4th at p. 158.) The Board does not convincingly contend otherwise. Neither its decision in this case nor its amicus curiae submission to this court ever explains how the statutory definition of "compensation" as including only "compensation under" division 4 of the Labor Code can be stretched to cover IDL payments provided by the Government Code. The Board's position instead relies largely on the language of *Brooks*, *Ellison*, and other cases that did not purport to answer the question now before us, and whose holdings create no conflict with the straightforward reading of the statutory text we adopt today.

## CONCLUSION

We affirm the judgment of the Court of Appeal.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Department of Corrections & Rehabilitation v. Workers' Compensation Appeals Board

_____

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 94 Cal.App.5th 464
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S282013
**Date Filed:**  February 20, 2025

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Carla R. Anene, Jasmine Dovlatyan, Mark Beatty, Mary R. Huckabaa, A. Gina Hogtanian and Tariq Ashrati for Petitioner.

Ellen Sims Langille for California Workers' Compensation Institute as Amicus Curiae on behalf of Petitioner.

Anne Schmitz and Allison J. Fairchild for Respondent Workers' Compensation Appeals Board.

Adams, Ferrone, Ferrone, Ferrone Law Group and Michael T. Bannon for Respondent Michael Ayala.

Anne Schmitz and Allison J. Fairchild for Workers' Compensation Appeals Board as Amicus Curiae on behalf of Respondent Michael Ayala.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Michael T. Bannon
Ferrone Law Group
4333 Park Terrace Drive, Suite 200
Westlake Village, CA 91361
(805) 373-5900

A. Gina Hogtanian
State Compensation Insurance Fund
655 North Central Avenue, 3d Floor
Glendale, CA 91203
(707) 592-9416